# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20333

United States Court of Appeals
Fifth Circuit

**FILED**
June 1, 2018

Lyle W. Cayce
Clerk

MARANDA LYNN ODONNELL,

Plaintiff - Appellee

v.

HARRIS COUNTY, TEXAS; ERIC STEWART HAGSTETTE; JOSEPH LICATA, III; RONALD NICHOLAS; BLANCA ESTELA VILLAGOMEZ; JILL WALLACE; PAULA GOODHART; BILL HARMON; NATALIE C. FLEMNG; JOHN CLINTON; MARGARET HARRIS; LARRY STANDLEY; PAM DERBYSHIRE; JAY KARAHAN; JUDGE ANALIA WILKERSON; DAN SPJUT; JUDGE DIANE BULL; JUDGE ROBIN BROWN; DONALD SMYTH; JEAN HUGHES,

Defendants - Appellants

------------------------------------------------------

LOETHA SHANTA MCGRUDER; ROBERT RYAN FORD,

Plaintiffs - Appellees

v.

HARRIS COUNTY, TEXAS; JILL WALLACE; ERIC STEWART HAGSTETTE; JOSEPH LICATA, III; RONALD NICHOLAS; BLANCA ESTELA VILLAGOMEZ,

Defendants - Appellants

Appeals from the United States District Court
for the Southern District of Texas

No. 17-20333

ON PETITION FOR REHEARING

Before CLEMENT and HAYNES, Circuit Judges.*

EDITH BROWN CLEMENT, Circuit Judge:

The appellees' petition for panel rehearing is granted. The prior panel opinion, *ODonnell v. Harris County*, No. 17-20333 (5th Cir. 2018) is withdrawn, and the following opinion is substituted:

Maranda ODonnell and other plaintiffs (collectively, "ODonnell") brought a class action suit against Harris County, Texas, and a number of its officials—including County Judges,[1] Hearing Officers, and the Sheriff (collectively, the "County")—under 42 U.S.C. § 1983. ODonnell alleged the County's system of setting bail for indigent misdemeanor arrestees violated Texas statutory and constitutional law, as well as the equal protection and due process clauses of the Fourteenth Amendment. ODonnell moved for a preliminary injunction, and the County moved for summary judgment. After eight days of hearings, at which the parties presented numerous fact and expert witnesses and voluminous written evidence, the district court denied the County's summary judgment motion and granted ODonnell's motion for a preliminary injunction. The County then applied to this court for a stay of the injunction pending appeal, but the motion was denied, and the injunction went into effect. Before this court now is the County's appeal, seeking vacatur of the injunction and raising numerous legal challenges.

---

* Judge Prado was a member of the original panel and participated in the initial decision. He retired from the Court on April 2, 2018, and therefore did not participate in the panel's review of the petitions for panel rehearing. The case is being decided by a quorum. 28 U.S.C. § 46(d).

[1] The parties use the term "County Judges" to refer to the judges of the County Criminal Courts of Harris County, and we will use that same term. This term does not refer to the County Judge who is the head of the County Commissioners' Court of Harris County.

No. 17-20333

For the reasons set forth, we affirm most of the district court's rulings, including its conclusion that ODonnell established a likelihood of success on the merits of its claims that the County's policies violate procedural due process and equal protection. We disagree, however, with the district court's analysis in three respects: First, its definition of ODonnell's liberty interest under due process was too broad, and the procedures it required to protect that interest were too onerous. Second, it erred by concluding that the County Sheriff can be considered a County policymaker under § 1983. Finally, the district court's injunction was overbroad. As a result, we will vacate the injunction and order the district court to modify its terms in a manner consistent with this opinion.

I.

We need not conduct an exhaustive review of the facts. The district court's account is expansive: It comprised over 120 pages of factual findings, including not only the specific details of the County's bail-setting procedures, but also the history of bail and recent reform attempts nationwide.

Bail in Texas is either secured or unsecured. Secured bail requires the arrestee to post bond either out of the arrestee's pocket or from a third-party surety (often bail bondsmen, who generally require a 10% non-refundable premium in exchange for posting bond). Unsecured bail, by contrast, allows the arrestee to be released without posting bond, but if he fails to attend his court date and/or comply with any nonfinancial bail conditions, he becomes liable to the County for the bail amount. Both secured and unsecured bail may also include nonfinancial conditions to assure the detainee's attendance at future hearings.

The basic procedural framework governing the administration of bail in Harris County is set by the Texas Code of Criminal Procedure and local rules promulgated by County Judges. *See* Tex. Gov't Code § 75.403(f). When a

3

misdemeanor defendant is arrested, the prosecutor submits a secured bail amount according to a bond schedule established by County Judges. *See* Harris County Criminal Courts at Law Rule 9 (*hereinafter*, "Local Rule"). Bonds are then formally set by Hearing Officers and County Judges. Tex. Code. Crim. Pro. art. 2.09, 17.15. Hearing Officers are generally responsible for setting bail amounts in the first instance. This often occurs during the arrestee's initial probable cause hearing, which must be held within 24 hours of arrest. Tex. Code Crim. Pro. art. 17.033; Local Rule 4.2.1.1. County Judges review the Hearing Officers' determinations and can adjust bail amounts at a "Next Business Day" hearing. Local Rule 4.3.1.

The Hearing Officers and County Judges are legally proscribed from mechanically applying the bail schedule to a given arrestee. Instead, the Texas Code requires officials to conduct an individualized review based on five enumerated factors, which include the defendant's ability to pay, the charge, and community safety. Tex. Code of Crim. Pro. art. 17.15. The Local Rules explicitly state the schedule is not mandatory. They also authorize a similar, individualized assessment using factors which partially overlap with those listed in the Code. Local Rule 4.2.4. Hearing Officers and County Judges sometimes receive assessments by Pretrial Services, which interviews the detainees prior to hearings, calculates the detainees flight and safety risk based on a point system, and then makes specific recommendations regarding bail.[2]

Despite these formal requirements, the district court found that, in practice, County procedures were dictated by an unwritten custom and

---

[2] Individualized assessment is also assured by a preexisting federal consent decree, which requires County officials to make individualized assessments of each misdemeanor defendant's case and adjust the scheduled bail amount accordingly, or else release the defendant on unsecured or nonfinancial conditions.

practice that was marred by gross inefficiencies, did not achieve any individualized assessment in setting bail, and was incompetent to do so. The district court noted that the statutorily-mandated probable cause hearing (where bail is usually set) frequently does not occur within 24 hours of arrest. The hearings often last seconds, and rarely more than a few minutes. Arrestees are instructed not to speak, and are not offered any opportunity to submit evidence of relative ability to post bond at the scheduled amount.

The court found that the results of this flawed procedural framework demonstrate the lack of individualized assessments when officials set bail. County officials "impose the scheduled bail amounts on a secured basis about 90 percent of the time. When [they] do change the bail amount, it is often to conform the amount to what is in the bail schedule." The court further found that, when Pretrial Services recommends release on personal bond, Hearing Officers reject the suggestion 66% of the time. Because less than 10% of misdemeanor arrestees are assigned an unsecured personal bond, some amount of upfront payment is required for release in the vast majority of cases.

The court also found that the "Next Business Day" hearing before a County Judge fails to provide a meaningful review of the Hearing Officer's bail determinations. Arrestees routinely must wait days for their hearings. County Judges adjust bail amounts or grant unsecured bonds in less than 1% of cases. Furthermore, prosecutors routinely offer time-served plea bargains at the hearing, and arrestees are under immense pressure to accept the plea deals or else remain incarcerated for days or weeks until they are appointed a lawyer.

The district court further noted the various ways in which the imposition of secured bail specifically targets poor arrestees. For example, under the County's risk-assessment point system used by Pretrial Services, poverty indicators (such as not owning a car) receive the same point value as prior criminal violations or prior failures to appear in court. Thus, an arrestee's

impoverishment increased the likelihood he or she would need to pay to be released.

The court also observed that Hearing Officers imposed secured bails upon arrestees after having been made aware of an arrestee's indigence by the risk-assessment reports or by the arrestee's own statements. And further, after extensive review of numerous bail hearings, the court concluded Hearing Officers were aware that, by imposing a secured bail on indigent arrestees, they were ensuring that those arrestees would remain detained.

The court rejected the argument that imposing secured bonds served the County's interest in ensuring the arrestee appeared at the future court date and committed no further crime. The court's review of reams of empirical data suggested the opposite: that "release on secured financial conditions does not assure better rates of appearance or of law-abiding conduct before trial compared to release on unsecured bonds or nonfinancial conditions of supervision." Instead, the County's true purpose was "to achieve pretrial detention of misdemeanor defendants who are too poor to pay, when those defendants would promptly be released if they could pay." In short, "secured money bail function[ed] as a pretrial detention order" against the indigent misdemeanor arrestees.

The district court also reviewed voluminous empirical data and academic literature to evaluate the impact of pretrial detention on an arrestee. The court found that the expected outcomes for an arrestee who cannot afford to post bond are significantly worse than for those arrestees who can. In general, indigent arrestees who remain incarcerated because they cannot make bail are significantly more likely to plead guilty and to be sentenced to imprisonment. They also receive sentences that are on average twice as long as their bonded counterparts. Furthermore, the district court found that pretrial detention can

No. 17-20333

lead to loss of job, family stress, and even an increase in likeliness to commit crime.

The court concluded that ODonnell had established a likelihood of success on the merits of their claim that the County violated both the procedural due process rights and the equal protection rights of indigent misdemeanor detainees. It granted the motion for a preliminary injunction, requiring the implementation of new safeguards and the release of numerous detainees subjected to the insufficient procedures.

## II.

This court reviews a "district court's grant of a preliminary injunction . . . for abuse of discretion." *Women's Med. Cty. of Nw. Hous. v. Bell*, 248 F.3d 411, 418–19 (5th Cir. 2001). "Findings of fact are reviewed only for clear error; legal conclusions are subject to *de novo* review." *Id.* at 419. "Issuance of an injunction rests primarily in the informed discretion of the district court. Yet injunctive relief is a drastic remedy, not to be applied as a matter of course." *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 733 (5th Cir. 1977) (internal citations omitted). A district court abuses its discretion if it issues an injunction that "is not narrowly tailored to remedy the specific action which gives rise to the order as determined by the substantive law at issue." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (internal quotation marks and alterations omitted).

## III.

The County raises a number of arguments that do not implicate the merits of ODonnell's constitutional claims. We address these first.

*A. Status of County Judges and Sheriff as County Policymakers under § 1983*

The County appeals the district court's ruling that the County Judges and Sheriff qualified as Harris County policymakers under 42 U.S.C. § 1983.

7

Liability under § 1983 attaches to local government officers "whose [unlawful] decisions represent the official policy of the local governmental unit." *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Whether an officer has been given this authority is "a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). "Official policy" includes unwritten widespread practices that are "so common and well settled as to constitute a custom that fairly represents municipal policy." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)). And unlawful decisions include "acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Jett*, 491 U.S. at 737 (internal quotation marks omitted).

Though a judge is not liable when "acting in his or her judicial capacity to enforce state law," *Moore*, 958 F.2d at 94, we agree with the district court that the County Judges are policymakers for the municipality. Texas law explicitly establishes that the Judges are "county officers," TEX. CONST. art. V § 24, imbued with broad authority to promulgate rules that will dictate post-arrest policies consistent with the provisions of state law, Tex. Gov't Code § 75.403(f). Here, ODonnell alleged that, despite having this authority, County Judges acquiesced in an unwritten, countywide process for setting bail that violated both state law and the Constitution. In other words, they sue the County Judges as municipal officers in their capacity as county policymakers. Section 1983 affords them an appropriate basis to do so.

We agree with the County that its Sheriff is not an appropriate party for attaching municipal liability, however. The Sheriff does not have the same policymaking authority as the County Judges. To the contrary, the Sheriff is legally obliged to execute all lawful process and cannot release prisoners committed to jail by a magistrate's warrant—even if prisoners are committed

"for want of bail." *See* Tex. Code Crim. Pro. arts. 2.13, 2.16, 2.18; Tex. Loc. Gov't Code § 351.041(a) (noting the Sheriff's authority is "subject to an order of the proper court"). State statutes, in other words, do not authorize the County Sheriff to avoid executing judicial orders imposing secured bail by unilaterally declaring them unconstitutional. Accordingly, the County Sheriff does not qualify as a municipal policymaker under § 1983.

B. Younger *Abstention*

The County next argues that *Younger* abstention precludes our review of ODonnell's claims. We are not persuaded.

The Supreme Court held in *Younger v. Harris* that, when a party in federal court is simultaneously defending a state criminal prosecution, federal courts "should not act to restrain [the state] criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." 401 U.S. 37, 43–44 (1971). Its conclusion was motivated by the "basic doctrine of equity jurisprudence," "notion[s] of 'comity,'" and "Our Federalism." *Id.* Courts apply a three-part test when deciding whether to abstain under *Younger*. There must be (1) "an ongoing state judicial proceeding" (2) that "implicate[s] important state interests" and (3) offers "adequate opportunity" to "raise constitutional challenges." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The third prong of this test is not met. As the Supreme Court has already concluded, the relief sought by ODonnell—i.e., improvement of pretrial procedures and practice—is not properly reviewed by criminal proceedings in state court. *See Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975) (noting that abstention did not apply because "[t]he injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal

prosecution"); *see also Pugh v. Rainwater*, 483 F.2d 778, 781–82 (5th Cir. 1973) (noting that a federal question whose "resolution . . . would [only] affect state procedures for handling criminal cases . . . . is not 'against any pending or future court proceedings *as such*'" (quoting *Fuentes v. Shevin*, 407 U.S. 67, 71 n.3 (1971))), *rev'd on other grounds by Gerstein*, 420 U.S. 103. As the district court noted, the adequacy of the state court review of bail-setting procedures is essential to ODonnell's federal cause of action. In short, "[t]o find that the plaintiffs have an adequate hearing on their constitutional claim in state court would decide [its] merits."

We also note that the policy concerns underlying this doctrine are not applicable here. The injunction sought by ODonnell seeks to impose "nondiscretionary procedural safeguard[s]," which will not require federal intrusion into pre-trial decisions on a case-by-case basis. *Tarter v. Hurry*, 646 F.2d 1010, 1013–14 (5th Cir. Unit A June 1981); *compare O'Shea v. Littleton*, 414 U.S. 488, 499–502 (1974) (noting that the enforcement of the improper injunction in question required "continuous supervision by the federal court over the conduct of the petitioners in the course of future criminal trial proceedings involving any of the members of the respondents' broadly defined class"). Such relief does not implicate our concerns for comity and federalism.[3]

### C. The County's Eighth Amendment Argument

The County contends that ODonnell's complaint "is an Eighth Amendment case wearing a Fourteenth Amendment costume." The Eighth

---

[3] The County also argues that we are precluded from reviewing ODonnell's claims because they should have been raised as a petition for habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973). We agree with the district court that this argument has been waived. The County neither mentioned *Preiser* nor pressed the habeas argument until its motion for a stay of the injunction. The closest the County came to preserving this argument was one sentence in its response to ODonnell's motion for preliminary injunction. This passing reference is insufficient to preserve the argument, especially given that it is dispositive of the case at the threshold stage.

Amendment states in relevant part that "[e]xcessive bail shall not be required." U.S. CONST. amend. VIII. It is certainly true that, when a constitutional provision specifically addresses a given claim for relief under 42 U.S.C. § 1983, a party should seek to apply that provision directly. *See Graham v. Connor*, 490 U.S. 386, 394 (1989); *cf. Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017). But we have already concluded that "[t]he incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements." *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc). ODonnell's present claims do not run afoul of *Graham*.

IV.

We now address the merits of ODonnell's constitutional claims. For the reasons set forth below, we affirm the court's rulings that the County's bail system violates both due process and equal protection, though we modify the basis for its conclusion as to due process.

*A. Due Process Claim*

Procedural due process claims are subject to a two-step inquiry: "The first question asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010) (internal quotation marks omitted). Applying this framework, we disagree with the district court's formulation of the liberty interest created by state law, but agree that the procedural protections of bail-setting procedures are nevertheless constitutionally deficient.

Liberty interests protected by the due process clause can arise from two sources, "the Due Process Clause itself and the laws of the States." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citation omitted). Here,

our focus is the law of Texas, which has acknowledged the two-fold, conflicting purpose of bail. This tension defines the protected liberty interest at issue here.

On the one hand, bail is meant "to secure the presence of the defendant in court at his trial." *Ex parte Vance*, 608 S.W.2d 681, 683 (Tex. Crim. App. 1980). Accordingly, "ability to make bail is a factor to be considered, [but] ability alone, even indigency, does not control the amount of bail." *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980). On the other hand, Texas courts have repeatedly emphasized the importance of bail as a means of protecting an accused detainee's constitutional right "in remaining free before trial," which allows for the "unhampered preparation of a defense, and . . . prevent[s] the infliction of punishment prior to conviction." *Ex parte Anderer*, 61 S.W.3d 398, 404–05 (Tex. Crim. App. 2001) (en banc). Accordingly, the courts have sought to limit the imposition of "preventive [pretrial] detention" as "abhorrent to the American system of justice." *Ex parte Davis*, 574 S.W.2d 166, 169 (Tex. Crim. App. 1978). Notably, state courts have recognized that "the power to . . . *require* bail," not simply the denial of bail, can be an "instrument of [such] oppression." *Taylor v. State*, 667 S.W.2d 149, 151 (Tex. Crim. App. 1984) (en banc) (emphasis added).

These protections are also ensconced in the Texas Constitution. Specifically, Article 1 § 11 reads in relevant part, "[a]ll prisoners shall be bailable by sufficient sureties." TEX. CONST. art. 1, § 11. The provision is followed by a list of exceptions—i.e., circumstances in which an arrestee may be "denied release on bail." *Id.* §§ 11b, 11c. The only exception tied to misdemeanor charges pertains to family violence offenses. *See id.* § 11c. The scope of these exceptions has been carefully limited by state courts, which observe that they "include the seeds of preventive detention." *Davis*, 574 S.W.2d at 169.

12

No. 17-20333

The district court held that § 11 creates a state-made "liberty interest in misdemeanor defendants' release from custody before trial. Under Texas law, judicial officers . . . have no authority or discretion to order pretrial preventive detention in misdemeanor cases." This is too broad a reading of the law. The Constitution creates a right to bail on "sufficient sureties," which includes both a concern for the arrestee's interest in pretrial freedom and the court's interest in assurance. Since bail is not purely defined by what the detainee can afford, *see Charlesworth*, 600 S.W.2d at 317, the constitutional provision forbidding denial of release on bail for misdemeanor arrestees does not create an automatic right to pretrial release.[4]

Instead, Texas state law creates a right to bail that appropriately weighs the detainees' interest in pretrial release and the court's interest in securing the detainee's attendance. Yet, as noted, state law forbids the setting of bail as an "instrument of oppression." Thus, magistrates may not impose a secured bail solely for the purpose of detaining the accused. And, when the accused is indigent, setting a secured bail will, in most cases, have the same effect as a detention order. Accordingly, such decisions must reflect a careful weighing of the individualized factors set forth by both the state Code of Criminal Procedure and Local Rules.

Having found a state-created interest, we turn now to whether the procedures in place adequately protect that interest. As always, we are guided by a three-part balancing test that looks to "the private interest . . . affected by the official action"; "the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or

---

[4] We also note that Texas courts have never sought to eliminate the use of bail bonds. To the contrary, the use of secured bail was affirmed by the Texas Court of Criminal Appeals in *Anderer*, despite the opinion's strong language in support of an accused's pretrial freedom. *Anderer*, 61 S.W.3d at 403.

substitute procedural safeguards"; and "the Government's interest, including the function involved and the fiscal and administrative burdens" that new procedures would impose. *Meza*, 607 F.3d at 402 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

As the district court found, the current procedures are inadequate—even when applied to our narrower understanding of the liberty interest at stake. The court's factual findings (which are not clearly erroneous) demonstrate that secured bail orders are imposed almost automatically on indigent arrestees. Far from demonstrating sensitivity to the indigent misdemeanor defendants' ability to pay, Hearing Officers and County Judges almost always set a bail amount that detains the indigent. In other words, the current procedure does not sufficiently protect detainees from magistrates imposing bail as an "instrument of oppression."

The district court laid out specific procedures necessary to satisfy constitutional due process when setting bail. Specifically, it found that,

> Due process requires: (1) notice that the financial and other resource information Pretrial Services officers collect is for the purpose of determining a misdemeanor arrestee's eligibility for release or detention; (2) a hearing at which the arrestee has an opportunity to be heard and to present evidence; (3) an impartial decisionmaker; (4) a written statement by the factfinder as to the evidence relied on to find that a secured financial condition is the only reasonable way to assure the arrestee's appearance at hearings and law-abiding behavior before trial; and (5) timely proceedings within 24 hours of arrest.[5]

---

[5] The district court analyzed new efforts by both the County and State to improve their bail-setting procedures. We need not review its discussion here. We note, however, that we agree with its conclusions that the County's proposed remedies, which are beginning to be implemented, fail to address the constitutional violations at issue. We also agree that the changes proposed by the State would provide a more adequate remedy. Should these provisions become law, the need for the court's intervention must be revisited.

No. 17-20333

The County challenges these requirements on appeal. We find some of their objections persuasive.

As this court has noted, the quality of procedural protections owed a defendant is evaluated on a "spectrum" based on a case-by-case evaluation of the liberty interests and governmental burdens at issue. *Meza*, 607 F.3d at 408–09. We note that the liberty interest of the arrestees here are particularly important: the right to pretrial liberty of those accused (that is, presumed innocent) of misdemeanor crimes upon the court's receipt of reasonable assurance of their return. *See id.* So too, however, is the government's interest in efficiency. After all, the accused also stands to benefit from efficient processing because it "allow[s] [for his or her] expeditious release." *United States v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983); *cf. Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991) (noting that defendants might be disserved by adding procedural complexity into an already complicated system). The sheer number of bail hearings in Harris County each year—according to the court, over 50,000 people were arrested on misdemeanor charges in 2015—is a significant factor militating against overcorrection.

With this in mind, we make two modifications to the district court's conclusions regarding the procedural floor. First, we do not require factfinders to issue a written statement of their reasons. While we acknowledge "the provision for a written record helps to insure that [such officials], faced with possible scrutiny by state officials . . . [and] the courts . . . will act fairly," *Wolff v. McDonnell*, 418 U.S. 539, 565 (1974), such a drastic increase in the burden imposed upon Hearing Officers will do more harm than good. We decline to hold that the Constitution requires the County to produce 50,000 written opinions per year to satisfy due process. *Cf. United States v. McConnell*, 842 F.2d 105, 110 (5th Cir. 1988) (concluding that, under the Bail Reform Act of 1984, the "court must [merely] explain its reasons for concluding that the

15

particular financial requirement is a necessary part of the conditions for release" when setting a bond that a detainee cannot pay). Moreover, since the constitutional defect in the process afforded was the *automatic* imposition of pretrial detention on indigent misdemeanor arrestees, requiring magistrates to specifically enunciate their individualized, case-specific reasons for so doing is a sufficient remedy.

Second, we find that the district court's 24-hour requirement is too strict under federal constitutional standards. The court's decision to impose a 24-hour limit relied not on an analysis of present Harris County procedures and their current capacity; rather, it relied on the fact that a district court imposed this requirement thirty years ago (that is, prior to modern advancements in computer and communications technology). *See Sanders v. City of Hous.*, 543 F. Supp. 694 (S.D. Tex. 1982). But *Sanders*'s holding, which was not grounded in procedural due process but in the Fourth Amendment, relied on the Supreme Court opinion, *Gerstein*, 420 U.S. 103. *Id.* at 699. And *Gerstein* was later interpreted as establishing a right to a probable cause hearing within 48 hours. *McLaughlin*, 500 U.S. at 56–57. Further, *McLaughlin* explicitly included bail hearings within this deadline. *Id.* at 58.

We conclude that the federal due process right entitles detainees to a hearing within 48 hours. Our review of the due process right at issue here counsels against an expansion of the right already afforded detainees under the Fourth Amendment by *McLaughlin*. We note in particular that the heavy administrative burden of a 24-hour requirement on the County is evidenced by the district court's own finding: the fact that 20% of detainees do not receive a probable cause hearing within 24 hours despite the statutory requirement. Imposing the same requirement for bail would only exacerbate such issues.

The court's conclusion was also based on its interpretation of state law. But while state law may define liberty interests protected under the procedural

due process clause, it does not define the procedure constitutionally required to protect that interest. *See Wansley v. Miss. Dep't of Corr.*, 769 F.3d 309, 313 (5th Cir. 2014) (noting that state law cannot serve as "the source of . . . process due"); *Giovanni v. Lynn*, 48 F.3d 908, 912 (5th Cir. 1995) ("[W]here a liberty . . . interest is infringed, the process which is due under the United States Constitution is that measured by the due process clause, not that called for by state regulations. Mere failure to accord the procedural protections called for by state law or regulation does not of itself amount to a denial of due process." (internal citation omitted)). Accordingly, although the parties contest whether state law imposes a 24- or 48-hour requirement, we need not resolve this issue because state law procedural requirements do not impact our federal due process analysis.

The district court's definition of ODonnell's liberty interests is too broad, and the procedural protections it required are too strict. Nevertheless, even under our more forgiving framework, we agree that the County procedures violate ODonnell's due process rights.

*B. Equal Protection*

The district court held that the County's bail-setting procedures violated the equal protection clause of the Fourteenth Amendment because they treat otherwise similarly-situated misdemeanor arrestees differently based solely on their relative wealth. The County makes three separate arguments against this holding. It argues: (1) ODonnell's disparate impact theory is not cognizable under the equal protection clause, *see Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997); (2) rational basis review applies and is satisfied; (3) even if heightened scrutiny applies, it is satisfied. We disagree.

First, the district court did not conclude that the County policies and procedures violated the equal protection clause solely on the basis of their disparate impact. Instead, it found the County's custom and practice

purposefully "detain[ed] misdemeanor defendants before trial who are otherwise eligible for release, but whose indigence makes them unable to pay secured financial conditions of release." The conclusion of a discriminatory purpose was evidenced by numerous, sufficiently supported factual findings, including direct evidence from bail hearings. This custom and practice resulted in detainment solely due to a person's indigency because the financial conditions for release are based on predetermined amounts beyond a person's ability to pay and without any "meaningful consideration of other possible alternatives." *Rainwater*, 572 F.2d at 1057. Under this circuit's binding precedent, the district court was therefore correct to conclude that this discriminatory action was unconstitutional. *Id.* at 1056–57 (noting that pretrial "imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible" under both "due process and equal protection requirements"); *see also Griffin v. Illinois*, 351 U.S. 12, 18 (1956) (noting that the indigent are protected by equal protection "at all stages of [criminal] proceedings"). Because this conclusion is sufficient to decide this case, we need not determine whether the equal protection clause requires a categorical bar on secured money bail for indigent misdemeanor arrestees who cannot pay it.

Second, the district court's application of intermediate scrutiny was not in error. It is true that, ordinarily, "[n]either prisoners nor indigents constitute a suspect class." *Carson v. Johnson*, 112 F.3d 818, 821–22 (5th Cir. 1997). But the Supreme Court has found that heightened scrutiny is required when criminal laws detain poor defendants *because of* their indigence. *See, e.g.*, *Tate v. Short*, 401 U.S. 395, 397–99 (1971) (invalidating a facially neutral statute that authorized imprisonment for failure to pay fines because it violated the equal protection rights of indigents); *Williams v. Illinois*, 399 U.S. 235, 241–42 (1970) (invalidating a facially neutral statute that required convicted

defendants to remain in jail beyond the maximum sentence if they could not pay other fines associated with their sentences because it violated the equal protection rights of indigents). Reviewing this case law, the Supreme Court later noted that indigents receive a heightened scrutiny where two conditions are met: (1) "because of their impecunity they were completely unable to pay for some desired benefit," and (2) "as a consequence, they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 20 (1973).

We conclude that this case falls into the exception created by the Court. Both aspects of the *Rodriguez* analysis apply here: indigent misdemeanor arrestees are unable to pay secured bail, and, as a result, sustain an absolute deprivation of their most basic liberty interests—freedom from incarceration. Moreover, this case presents the same basic injustice: poor arrestees in Harris County are incarcerated where similarly situated wealthy arrestees are not, solely because the indigent cannot afford to pay a secured bond. Heightened scrutiny of the County's policy is appropriate.[6]

Third, we discern no error in the court's conclusion that the County's policy failed to meet the tailoring requirements of intermediate scrutiny. In other words, we will not disturb the court's finding that, although the County had a compelling interest in the assurance of a misdemeanor detainee's future

---

[6] We acknowledge that the cited Supreme Court cases applied to indigents who were already found guilty. But this court in *Rainwater* concluded that the distinction between post-conviction detention targeting indigents and pretrial detention targeting indigents is one without a difference. We found that, regardless of its timing, "imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible." *Rainwater*, 572 F.2d at 1056 (citing *Williams* and *Tate*). Our conclusion was based on the "punitive and heavily burdensome nature of pretrial confinement" and the fact that it deprives someone who has only been "accused but not convicted of crime" of their basic liberty. *Id.*; *see also Anderson v. Nosser*, 438 F.2d 183, 190 (5th Cir. 1971) (noting that the pre-trial detainment of "unconvicted misdemeanants" was a "[p]unitive measure[ ] . . . out of harmony with the presumption of innocence"). We are bound by this analysis.

appearance and lawful behavior, its policy was not narrowly tailored to meet that interest.

The court's thorough review of empirical data and studies found that the County had failed to establish any "link between financial conditions of release and appearance at trial or law-abiding behavior before trial." For example, both parties' experts agreed that the County lacked adequate data to demonstrate whether secured bail was more effective than personal bonds in securing a detainee's future appearance. Notably, even after analyzing the incomplete data that were available, neither expert discerned more than a negligible comparative impact on detainees' attendance. Additionally, the court considered a comprehensive study of the impact of Harris County's bail system on the behavior of misdemeanor detainees between 2008 and 2013. The study found that the imposition of secured bail might *increase* the likelihood of unlawful behavior. *See* Paul Heaton et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 STAN. L. REV. 711, 786–87 (2017) (estimating that the release on personal bond of the lowest-risk detainees would have resulted in 1,600 fewer felonies and 2,400 fewer misdemeanors within the following eighteen months). These findings mirrored those of various empirical studies from other jurisdictions.

The County, of course, challenges these assertions with empirical studies of its own. But its studies at best cast some doubt on the court's conclusions. They do not establish clear error. We are satisfied that the court had sufficient evidence to conclude that Harris County's use of secured bail violated equal protection.

In sum, the essence of the district court's equal protection analysis can be boiled down to the following: take two misdemeanor arrestees who are identical in every way—same charge, same criminal backgrounds, same circumstances, etc.—except that one is wealthy and one is indigent. Applying

No. 17-20333

the County's current custom and practice, with their lack of individualized assessment and mechanical application of the secured bail schedule, both arrestees would almost certainly receive identical secured bail amounts. One arrestee is able to post bond, and the other is not. As a result, the wealthy arrestee is less likely to plead guilty, more likely to receive a shorter sentence or be acquitted, and less likely to bear the social costs of incarceration. The poor arrestee, by contrast, must bear the brunt of all of these, simply because he has less money than his wealthy counterpart. The district court held that this state of affairs violates the equal protection clause, and we agree.

V.

Having largely affirmed the district court's determinations that constitutional violations occurred, we turn to the court's remedy. When crafting an injunction, district courts are guided by the Supreme Court's instruction that "the scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). A district court abuses its discretion if it does not "narrowly tailor an injunction to remedy the specific action which gives rise to the order." *John Doe # 1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004). Thus, an injunction must be vacated if it "fails to meet these standards" and "is overbroad." *Id.* "The broadness of an injunction refers to the range of proscribed activity . . . . [and] is a matter of substantive law." *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.19 (5th Cir. 1975).

The County argues that, even if the panel credits every one of the district court's factual findings and conclusions of law, the injunction it ultimately crafted is *still* overbroad. We agree. There is a significant mismatch between the district court's procedure-focused legal analysis and the sweeping injunction it implemented.

21

The fundamental source of constitutional deficiency in the due process and equal protection analyses is the same: the County's mechanical application of the secured bail schedule without regard for the individual arrestee's personal circumstances. Thus, the equitable remedy necessary to cure the constitutional infirmities arising under both clauses is the same: the County must implement the constitutionally-necessary procedures to engage in a case-by-case evaluation of a given arrestee's circumstances, taking into account the various factors required by Texas state law (only one of which is ability to pay). These procedures are: notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decision-maker.

That is not what the preliminary injunction does, however. Rather, it amounts to the outright elimination of secured bail for indigent misdemeanor arrestees. That remedy makes some sense if one assumes a fundamental substantive due process right to be free from any form of wealth-based detention. But, as the foregoing analysis establishes, no such right is in view. The sweeping injunction is overbroad.

We therefore conclude that the district court abused its discretion in crafting an injunction that was not "narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order." *Veneman*, 380 F.3d at 818. We will vacate the injunction and remand to allow the court to craft a remedy more finely tuned to address the harm.

The following represents the sort of modification that would be appropriate here, although we leave the details to the district court's discretion:

With these principles in mind, the court will order the following relief, to take effect within 30 days, unless those enjoined move for and show good cause for a reasonable, brief extension. Any motions for extension will be set for prompt hearing and resolution.

No. 17-20333

- Harris County is enjoined from imposing prescheduled bail amounts as a condition of release on arrestees who attest that they cannot afford such amounts without providing an adequate process for ensuring that there is individual consideration for each arrestee of whether another amount or condition provides sufficient sureties.

- Pretrial Services officers, as County employees and subject to its policies, must verify an arrestee's ability to pay a prescheduled financial condition of release by an affidavit, and must explain to arrestees the nature and significance of the verification process.

- The purpose of the explanation is to provide the notice due process requires that a misdemeanor defendant's state constitutional right to be bailable by sufficient sureties is at stake in the proceedings. Pretrial Services may administer either the form of the affidavit currently used to determine eligibility for appointed counsel or the adapted form that Dr. VanNostrand testified was prepared for Pretrial Services to be administered by July 1, 2017, if they comply with the below guidelines. Pretrial Services must deliver completed affidavits to the Harris County Sheriff's Office before a declarant's probable cause hearing.

- The affidavit must give the misdemeanor arrestee sufficient opportunity to declare under penalty of perjury, after the significance of the information has been explained, the maximum amount of financial security the arrestee would be able to post or pay up front within 24 hours of arrest. The affidavit should ask the arrestee to provide details about their financial situation sufficient to help the County make reliable determinations regarding the amount of bail that would provide sufficient sureties, including: 1) arrestee and spouse's income from employment, real property, interest and dividends, gifts, alimony, child support, retirement, disability, unemployment payments, public-assistance, and other sources; 2) arrestee and spouse's employment history for the prior two years and gross monthly pay; 3) arrestee and spouse's present cash available and any financial institutions where cash is held; 4) assets owned, e.g., real estate and motor vehicles; 5) money owed to arrestee and spouse; 6) dependents of arrestee and spouse, and their ages; 7) estimation of itemized monthly expenses; 8) taxes and legal costs; 9) expected major changes in income or expenses; 10) additional

23

information the arrestee wishes to provide to help explain the inability to pay. The question is neither the arrestee's immediate ability to pay with cash on hand, nor what assets the arrestee could eventually produce after a period of pretrial detention. The question is what amount the arrestee could reasonably pay within 24 hours of his or her arrest, from any source, including the contributions of family and friends.

- The purpose of this requirement is to provide a better, easier, and faster way to get the information needed to determine a misdemeanor defendant's ability to pay. The Hearing Officers and County Judges testified that they presently do not know who has the ability to pay. The affidavit can be completed within 24 hours after arrest; the current process of verifying references by phone extends for days after arrest.

- The court does not order relief against the Hearing Officers or against the County Judges in their judicial or legislative capacities.

- Misdemeanor defendants who are not subject to: (1) formal holds preventing their release from detention; (2) pending mental-health evaluations to determine competency; or (3) pretrial preventive detention orders for violating a condition of release for a crime of family violence, have a constitutionally protected state-created liberty interest in being bailable by sufficient sureties before trial. If a misdemeanor defendant has executed an affidavit showing an inability to pay prescheduled money bail and has not been released either: (1) on an unsecured personal bond with nonfinancial conditions of release; or (2) on a secured money bond for which the defendant could pay a commercial surety's premium, as indicated on the affidavit, then the defendant is entitled to a hearing within 48 hours of arrest in which an impartial decision-maker conducts an individual assessment of whether another amount of bail or other condition provides sufficient sureties. At the hearing, the arrestee must have an opportunity to describe evidence in his or her favor, and to respond to evidence described or presented by law enforcement. If the decision-maker declines to lower bail from the prescheduled amount to an amount the arrestee is able to pay, then the decision-maker must provide written factual findings or factual findings on the record explaining the reason for the decision, and the County must provide the arrestee with a formal adversarial bail review hearing

No. 17-20333

before a County Judge. The Harris County Sheriff is therefore authorized to decline to enforce orders requiring payment of prescheduled bail amounts as a condition of release for said defendants if the orders are not accompanied by a record showing that the required individual assessment was made and an opportunity for formal review was provided. All nonfinancial conditions of release ordered by the Hearing Officers, including protective orders, drug testing, alcohol intake ignition locks, or GPS monitoring, will remain in effect.

- The purpose of this requirement is to provide timely protection for the state-created liberty interest in being bailable by sufficient sureties and to prevent the automatic imposition of prescheduled bail amounts without an adequate process for ensuring that there is individualized consideration of whether another amount or condition provides sufficient sureties.

- To enforce the 48-hour timeline, the County must make a weekly report to the district court of misdemeanor defendants identified above for whom a timely individual assessment has not been held. The County must also notify the defendant's counsel and/or next of kin of the delay. A pattern of delays might warrant further relief from the district court. Because the court recognizes that the County might need additional time to comply with this requirement, the County may propose a reasonable timeline for doing so.

- The purpose of this requirement is to give timely protection to the state-created liberty interest in being bailable by sufficient sureties by enforcing federal standards indicating that 48 hours is a reasonable timeframe for completing the administrative incidents to arrest. The 48-hour requirement is intended to address the endemic problem of misdemeanor arrestees being detained until case disposition and pleading guilty to secure faster release from pretrial detention.

- For misdemeanor defendants who are subject to formal holds and who have executed an affidavit showing an inability to pay the prescheduled financial condition of release, the Sheriff must treat the limitations period on their holds as beginning to run the earliest of: (1) after the probable cause hearing; or (2) 24 hours after arrest. The purpose of this requirement is to ensure that misdemeanor

25

defendants are not prevented from or delayed in addressing their holds because they are indigent and therefore cannot pay a prescheduled financial condition of release.

- Misdemeanor defendants who do not appear competent to execute an affidavit may be evaluated under the procedures set out in the Texas Code of Criminal Procedure Article 16.22. If competence is found, the misdemeanor defendant is covered by the relief the court orders, with the exception that the 48-hour period begins to run from the finding of competence rather than from the time of arrest. As under Article 16.22, nothing in this order prevents the misdemeanor arrestee from being released on secured bail or unsecured personal bond pending the evaluation.

## VI.

For the forgoing reasons, we AFFIRM the district court's findings of fact. We AFFIRM its conclusions of law except its conclusion that the County Sheriff qualifies as a municipal policymaker under § 1983 and its determination of the specific procedural protections owed under procedural due process. On those issues, we REVERSE the district court's conclusions. Accordingly, we VACATE the preliminary injunction as overbroad and REMAND to the district court to craft a revised injunction—one that is narrowly tailored to cure the constitutional deficiencies the district court properly identified. But we also STAY the vacatur pending implementation of the revised injunction, so as to maintain a stable status quo.