

# Fourth Court of Appeals
## San Antonio, Texas

### CONCURRING OPINION

No. 04-26-00305-CR

**IN RE** Carrie **LOUDON**

Original Mandamus Proceeding[1]

PER CURIAM
Concurring Opinion by: Velia J. Meza, Justice

Sitting:      Lori I. Valenzuela, Justice
              H. Todd McCray, Justice
              Velia J. Meza, Justice

Delivered and Filed: June 17, 2026

Today, we are presented with yet another case in which the respondent judge altered a defendant's conditions of release not once, but twice, without any individualized, case-specific analysis. First, she overrode the magistrate's conditions within days of their issuance—adding a new restraint without notice, without a hearing, and without giving the defendant any opportunity to rebut the magistrate's decision as required by the Damon Allen Act. Then, when Loudon received habeas relief to undo that improper modification, respondent again imposed a new condition, once more without notice, without a hearing, and without any evidence to overcome the statutory presumption that the magistrate's conditions were the least restrictive necessary. After

---

[1] This proceeding arises out of Cause No. 2025PF26045, styled *State of Texas v. Carrie Loudon*, pending in the County Court at Law No. 12, Bexar County, Texas, the Honorable Yolanda T. Huff presiding.

the mandamus petition was filed in this Court, we afforded both respondent and the State an opportunity to file a response. Neither did so. Because a writ of mandamus is not the proper mechanism to seek redress here, I must concur in the denial of this petition.

Before turning to the facts of Loudon's case, it is necessary to recall why the Legislature enacted the Damon Allen Act and what it requires of magistrates.

Two cases—and the federal lawsuit that followed—brought the same recurring problem into sharp focus and ultimately led the Legislature to enact the Damon Allen Act. The first involved the fatal shooting of Trooper Damon Allen during a traffic stop in 2017. Trooper Allen was killed on Thanksgiving Day by a defendant whose bond had been set without any meaningful awareness of his recent assault on a deputy or his prior conviction for violently attacking another peace officer. And in Harris County, Maranda ODonnell—a young mother arrested for a misdemeanor—remained in custody solely because she could not afford the county's preset bail amount, a practice the federal courts held unconstitutional based on magistrates mechanically applying the county's bail schedule without regard for an arrestee's circumstances. *ODonnell v. Harris Cnty.*, 892 F.3d 147, 163 (5th Cir. 2018), *overruled on other grounds by Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022), *and by Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023). Both failures stemmed from the same omission: the absence of the individualized assessment the Constitution requires. It was to correct precisely these failures that the Texas Legislature mandated that magistrates impose only the least restrictive conditions of release necessary to ensure appearance and protect the community, and created a presumption that conditions set after such individualized consideration are sufficient.

With that context in mind, we turn to the matter before us. Carrie Loudon was pulled over on July 4, 2025, on suspicion of driving while intoxicated. A forensic blood alcohol test was

administered which later determined her blood alcohol concentration was under the legal limit at the time of the test. It is unclear from this record how much time had elapsed between the initiation of the traffic stop and the administration of the forensic blood alcohol test. Regardless, Loudon appeared before a magistrate on July 5, 2025, who set the conditions of her release. However, four days later—without any notice or a hearing—respondent modified the conditions of release set by the magistrate and imposed an additional requirement that Loudon install an ignition interlock device on her vehicle.

Under the laws of Texas, "[t]he amount of bail and any conditions of bail to be required in any case in which the defendant has been arrested . . . are governed by the Constitution" and the statutory framework enacted by the Texas Legislature. TEX. CODE CRIM. PRO. art. 17.15(a). This framework includes that:

1. Bail and any conditions of bail shall be sufficient to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be used to make bail an instrument of oppression.

3. The nature of the offense and the circumstances under which the offense was committed are to be considered, including whether the offense:
   (A)  is an offense involving violence as defined by Article 17.03;  or
   (B)  involves violence directed against a peace officer.

4. The ability to make bail shall be considered, and proof may be taken on this point.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant, including information obtained through the statewide telecommunications system maintained by the Department of Public Safety and through the public safety report system developed under Article 17.021, shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

*Id.* art. 17.15(a)(1)–(6). The requirement that individualized, case-specific facts be considered when setting bail ensures that a defendant's rights to due process and equal protection clauses

under the U.S. Constitution's Fourteenth Amendment are protected. *ODonnell*, 892 F.3d at 161, 163. Yet despite that clear mandate, the trial court here did precisely what the Act forbids. After Loudon obtained habeas relief in the trial court, the ignition interlock was removed. Thereafter, respondent once again unilaterally altered her conditions of release—this time imposing a portable alcohol-monitoring device. The State did not request this new condition, and its silence in this proceeding only underscores that nothing in the record supports the trial court's action.

Nearly a year later, this Court again faces the same respondent judge and the same departure from the Damon Allen Act's requirements. In *In re Requenez*, respondent modified a defendant's conditions of release to require an ignition interlock device be installed without taking any evidence to rebut the statutory presumption that the magistrate's bond conditions were the least restrictive necessary to secure the defendant's future appearances and ensure the safety of the community, law enforcement, and any alleged victims. No. 04-25-00234-CR, 2025 WL 1699238, at *1 (Tex. App.—San Antonio June 18, 2025, no pet.) (Valenzuela, J., concurring). In Justice Valenzuela's concurring opinion, she emphasized the Damon Allen Act's creation of a statutory rebuttable presumption that a magistrate's initial bail and decision "are sufficient to reasonably ensure the defendant's appearance in court . . . and the safety of the community, law enforcement, and the victim of the alleged offense." *Id.* (citation modified); *see also* TEX. CODE CRIM. PRO. art. 17.028(c) (statute creating the rebuttable presumption that the initial bail and conditions of release are sufficient).

However, just as in *Requenez*, mandamus relief is not appropriate in this case. *See State ex rel. Young v. Sixth Judicial Dist. Court of Appeals at Texarkana*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007) (holding that mandamus relief is appropriate if the relator establishes that (1) that he has no adequate remedy at law to redress his alleged harm and (2) that what he seeks to compel is

a ministerial act, not involving a discretionary or judicial decision). Here, an adequate remedy at law—one which she has previously exercised—exists for Loudon to redress this alleged harm: a writ of habeas corpus. Because this remedy is available to Loudon, I concur in denying the petition for writ of mandamus.

Our role as an appellate court is to review the entire record, apply the governing law, and provide clear guidance to the courts below. We do not issue opinions as academic exercises; we issue them so they will be read and followed. When the same legal errors recur despite our prior explanations, it raises a serious concern that our guidance is not being heeded. I say this with full appreciation for the realities of the trial bench. As a former criminal district court judge, I know firsthand the relentless pressures of managing a heavy criminal docket: the crowded calendars, the urgent demands, and the constant triage. But even under those pressures, judicial discretion has limits. The law binds us all, and none of us are free to disregard it.

Certainly, one of the purposes of our appellate opinions are to be instructive, especially to trial judges. And it is a trial judge's adherence to our precedent which promotes justice and allows law to prevail over anarchy. *See Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curium) (stating that "unless we wish anarchy to prevail within the federal judicial system" a higher court's precedent "must be followed by the lower federal courts no matter how misguided."); *see also Ex parte Ramirez-Hernandez*, 642 S.W.3d 907, 917 (Tex. App.—San Antonio 2022, no pet.) (stating that "[a]ppropriate bail is a fact-driven determination" requiring each case to "be judged on its own unique facts."). And even when mandamus relief is ultimately denied, this Court does not lose its ability—or its responsibility—to intervene through its opinions to correct such departures from settled law. When trial courts depart from these principles, they do not merely misapply the law—they erode the constitutional guarantees that protect every citizen accused. This Court's

intervention is therefore not only warranted; it is necessary to preserve the integrity of the judicial process.

Velia J. Meza, Justice

PUBLISH