James J. DOYLE, Petitioner-Appellant,

v.

Robert ELSEA, Warden of Oxford, F.C.I., Respondent-Appellee.

No. 80–2556.

United States Court of Appeals, Seventh Circuit.

Argued June 15, 1981.

Decided Aug. 31, 1981.

Rehearing and Rehearing En Banc Denied Nov. 13, 1981.

Timothy K. Thorson, Madison, Wis., for petitioner-appellant.

Richard E. Cohen, Asst. U. S. Atty., amicus curiae, Madison, Wis., for respondent-appellee.

Before SWYGERT, Senior Circuit Judge, and PELL and BAUER, Circuit Judges.

PER CURIAM.

On November 7, 1973, appellant James J. Doyle was sentenced to serve eight years in prison pursuant to this conviction, in the United States District Court for the District of Connecticut, of interstate transportation of forged travelers' checks. On July 15, 1976, Doyle was released on parole under the supervision of the United States Probation Office for the Southern District of New York. At that time Doyle had 1,949 days remaining on his 1973 sentence.

On December 23, 1977, Doyle and two others were arrested in Pierre, South Dakota. Doyle was charged on both state and federal levels with interstate transportation of stolen travelers' checks. Doyle and his two codefendants were placed in the county jail in Pierre. Bail was set for each; Doyle's was set at $5,000 for the state charge and $10,000 for the federal charge. The three defendants contacted a local bail bondsman and requested him to post a bail bond for them. The bondsman was satisfied that each had sufficient securities and monies to cover the proposed bail bond.

On December 30, 1977, before the bail bond was posted, the Assistant Attorney General for South Dakota became concerned that Doyle might "make bail and disappear." He therefore contacted Doyle's probation officer in New York, explained the situation to him, and requested that the United States Parole Commission issue a parole violation warrant against Doyle "in order that Doyle could be detained and not be able to disappear from their jurisdiction." The Assistant Attorney General's request was granted. The Parole Commission issued the warrant against Doyle on December 30, 1977.[1]

---

1. It is not clear whether this was standard Parole Commission procedure. 18 U.S.C. § 4213 provides that, when a parolee is alleged to have violated parole, the Commission may issue a warrant for the arrest of the parolee, and further provides:

Any summons or warrant issued under this section shall be issued by the commission as soon as practicable after discovery of the alleged violation, except when delay is deemed necessary. Imprisonment in an institution shall not be deemed grounds for delay of such issuance, *except that, in the case of any parolee charged with a criminal offense, issuance of a summons or warrant may be suspended pending disposition of the charge.*

At the county jail in Pierre, the bail bondsman posted the bail bond for Doyle's co-defendants but refused to post it for Doyle because of the issuance of the parole violation warrant. The bondsman later stated: "As a matter of policy I do not bail out people who are arrested in Pierre, South Dakota, who have a violator's warrant from the United States Parole Commission." Doyle was unable to raise the full amount of his bail in cash. He therefore remained in pretrial custody in the county jail.

The state charges against Doyle were dropped sometime in January of 1978. The Parole Commission refused to withdraw the violation warrant, however, so Doyle remained incarcerated. On April 24, 1978, he was convicted on the federal charge of transporting stolen checks and was sentenced to serve five years in prison. He began serving his sentence on that date, having spent four months in pretrial custody.

At some time after his 1978 conviction, the Parole Commission lodged the violation warrant as a detainer against Doyle in the federal prison where he was incarcerated.

Thereafter, in February 1980, Doyle petitioned the Parole Commission requesting that credit for the four months he spent in pretrial custody be applied to the time remaining on his 1973 sentence. This request was denied, initially on the ground that since he had not yet had a parole revocation hearing, the remainder of the 1973 sentence had not yet been reimposed. Therefore no credit could be applied to it.[2] At some point before Doyle's final administrative appeal from this decision, a revocation hearing was held. The Parole Commission revoked his parole, and imposed a "violator term" (that is, the remaining 1,949 days of his 1973 sentence) to run consecutively to his 1978 sentence. Doyle continued to press for a four-month credit on his violator term, but such credit was denied on the ground that the four months he spent in pretrial custody had already been credited to his 1978 sentence.

Having exhausted his administrative remedies, Doyle, proceeding *pro se*, brought the present petition for writ of habeas corpus, 28 U.S.C. § 2241, in the United States District Court for the Western District of Wisconsin.[3] In his petition, Doyle contended he was entitled to have a four-month credit applied to his violator term under 18

---

18 U.S.C. § 4213(b) (emphasis added). Thus, the Commission was not required to issue the warrant against Doyle as it did.

However, the regulations relating to section 4213 provide that

> [i]n the case of any parolee charged with a criminal offense, issuance of a summons or warrant may be withheld, *or a warrant may be issued and held in abeyance pending disposition of the charge.*

28 C.F.R. § 2.44(b) (emphasis added).

The Parole Commission's policy with respect to parolees accused of new crimes is not made clearer by its Procedures Manual. On the one hand, the Manual states it is Commission policy to wait for a conviction on the new charge before issuing a violation warrant. United States Parole Commission Procedures Manual § 120(C)(2) (Feb. 1, 1980). On the other hand, the Manual also provides:

> A parole violator warrant is normally issued for the purpose of returning a parolee to custody as soon as possible. However, where there is a pending criminal proceeding, execution of the warrant may be delayed pending disposition of local criminal charges, even if the parolee is released on bond.

*Id.*, § 120(D)(1).

In any event, whether or not it was standard procedure, the Commission acted within the scope of its authority in issuing the warrant against Doyle when it did.

**2.** This may not have been correct. According to an affidavit filed in this court, Doyle did receive a revocation hearing in January 1980 and as a result of the hearing the Commission revoked his parole in February 1980, ordering that the remainder of the 1973 sentence run consecutively to the 1978 sentence. This affidavit was not presented to the district court and the respondents have objected to it on that ground. Doyle does not appear to make anything of the discrepancy revealed by the affidavit. For that reason, and since his request for credit was ultimately denied on other grounds, the allegations contained in the affidavit do not raise material issues of fact.

**3.** Doyle is presently confined at the Federal Correctional Institution at Oxford, Wisconsin, which is within the Western District of Wisconsin.

U.S.C. § 3568, which provides that a person convicted and sentenced shall receive "credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." Doyle reasoned that his pretrial custody was "in connection with" his parole violation, and that therefore his violator term must be credited with the pretrial custody.

The district court dismissed the petition without requiring a responsive pleading from the respondent. We affirm.

## I. Credit for Pretrial Custody

Doyle places great emphasis on a line of Fifth Circuit cases beginning with *Davis v. Attorney General*, 425 F.2d 238 (5th Cir. 1970). The *Davis* court held that when an arrestee's release on bail is precluded because of a federal detainer, and he is ultimately sentenced to prison on the offense underlying the detainer, he is entitled to receive credit on the detainer-related sentence for the time spent in pretrial custody.[4] Doyle would have this court carry *Davis* and its progeny one step further and hold that such credit must be granted without regard to whether the credit was also applied to the arrest-related sentence. Such a rule would disregard the practical realities of the case before us. We therefore decline to adopt it.

As a practical matter, Doyle spent four months in pretrial custody for two reasons: because he was accused of committing a crime, and because he was accused of violating his parole. It seems obvious—and not particularly unusual—that he was in pretrial custody "in connection with" both the violator term and the 1978 sentence.

Therefore, under section 3568, he is entitled to receive credit for the pretrial custody. That is not to say that he is entitled to double credit. It simply means that he is entitled to have the total amount of time he must spend in prison under his two sentences reduced by the amount of time he spent in pretrial custody.

There is no dispute that Doyle received credit on his 1978 sentence for the full period he spent in pretrial custody. Because the parole violator term was ordered to run consecutively to the 1978 sentence, the effect of applying the credit to the 1978 sentence was to reduce the total amount of time Doyle must actually spend in prison by four months. That, and no more, is what Doyle is due under section 3568.[5]

## II. Timeliness of the Parole Revocation Hearing

Doyle's *pro se* habeas corpus petition addressed solely the issue of credit for his pretrial custody. However, Doyle is represented on this appeal by appointed counsel, and he has raised an additional argument which we shall address in the interest of judicial economy.

Doyle now contends that he should be relieved of serving any of his violator term because the Parole Commission failed to give him a parole revocation hearing within a reasonable time after it issued the parole revocation warrant against him. He raises three separate arguments in support of this contention.

### A. Due Process

First, Doyle claims a due process right to an early revocation hearing. In connection with this contention, he argues that *Morris-*

4. *Accord, United States v. Shillingford*, 586 F.2d 372, 375 (5th Cir. 1978); *Ballard v. Blackwell*, 449 F.2d 868, 869–70 (5th Cir. 1971).

5. *Compare Willis v. United States*, 438 F.2d 923 (5th Cir. 1971). In *Willis*, the defendant received *concurrent* sentences on his state and federal convictions. His federal sentence was longer than his state sentence. The state authorities applied his pretrial custody time to his state sentence, and the federal authorities, therefore, refused to apply the pretrial custody time to his federal sentence. The effect, of course, was that the time he was required to spend in prison on his sentences was not reduced at all by the amount of time he had already served in pretrial custody. The Fifth Circuit held he should be given credit on his federal sentence. *Willis* does not control this case because here Doyle received meaningful credit on his sentences. *Accord, Radcliffe v. Clark*, 451 F.2d 250 (5th Cir. 1971).

*sey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), controls this case. In *Morrissey,* the Supreme Court held that the decision to return a parolee to prison solely because of an alleged parole violation requires a preliminary probable cause hearing, and a parole revocation hearing within a reasonable time thereafter, because the parolee has a protected liberty interest in remaining free unless and until he breaks a condition of his parole. *Id.* at 482, 92 S.Ct. at 2600. Doyle argues that persons accused, not convicted, of committing a crime have protected liberty interests in the same sense that paroleees who are accused of violating parole have a protected liberty interest. Doyle urges that the Parole Commission's agreement to prevent Doyle's release on bail constituted an interference with his protected liberty interest. He concludes that this interference should have been accompanied by "some orderly process," *Morrissey* at 482, 92 S.Ct. at 2601, and that such "orderly process" includes a reasonably prompt parole revocation hearing.

The government, on the other hand, argues that *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), controls this case. In *Moody,* a parolee was convicted and sent to prison on a new criminal offense. The Parole Commission placed a violation warrant as a detainer against him at the prison where he was confined. His suit to force the Parole Commission to hold a prompt parole revocation hearing was rejected by the Supreme Court. The Court held that because he was already in prison, he had no liberty interest sufficient to trigger the due process requirement of a prompt parole revocation hearing.

*Moody* is distinguishable from the present case. Doyle argues, and we agree, that as a person accused but not convicted of a new crime, he had a greater liberty interest than did the parolee in *Moody.* However, Doyle's further argument, that his liberty interest called for the due process protections outlined in *Morrissey,* is incorrect.

Doyle's position is quite different from that of the parolee in *Morrissey,* for Doyle found himself in jail not simply because he was accused of violating parole, but, in addition, because he was accused of committing a new crime. His liberty interest—and the gravamen of his complaint—centers on his attempt to be released on bail. A "reasonably prompt" parole revocation hearing would in no way advance Doyle's interest in such pretrial release. We note the high importance that has long been attached to an accused's release on bail, *see, e. g., Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 2694 n.3, 61 L.Ed.2d 433 (1979); *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), and we will assume without deciding that once bail had been set for Doyle, he was entitled to some due process protection against interference with his release on bail. But it is illogical to say that the "process" he was due included a parole revocation hearing within three months of his arrest.

Accordingly, we find no due process violation in the Parole Commission's failure to hold a revocation hearing promptly after it issued the violation warrant against Doyle.[6]

---

**6.** Exactly what "process" was "due" in Doyle's situation need not be decided here, for the only question presented is whether a prompt revocation hearing was "due." However, it might be observed that due process would seem to be satisfied if Doyle had the opportunity, after the South Dakota Assistant Attorney General and the Parole Commission arranged to block his release on bail, to return to the magistrate, explain his circumstances, and request that bail be lowered to an amount he could afford without the aid of a bondsman. Even if the magistrate were to refuse this request, due process would be satisfied, for it has been held that

there is no absolute constitutional right to release on bail, *see, e. g., Sistrunk v. Lyons,* 646 F.2d 64 (3d Cir. 1981) (There is a constitutional right, not to bail, but "to be free from *excessive* bail.") (emphasis in original); *cf., e. g., Hunt v. Roth,* 648 F.2d 1148 (8th Cir. 1981) (held, eighth amendment "excessive bail" clause does not forbid denial of bail in particular cases, but it does forbid blanket preclusion of bail by legislature on sole basis of crime charged). For due process purposes, the constitutional liberty interest in release on bail arises *after* a magistrate has determined that an accused may be

**B.** *Statutory Rights*

■ Doyle's second argument is that he has a statutory right to an early revocation hearing. 18 U.S.C. § 4214(c) provides that an alleged parole violator who is "retaken" into the custody of the Attorney General by execution of a parole violation warrant, and who waives a preliminary probable cause hearing, or admits at the preliminary hearing that he violated parole, shall receive a revocation hearing within 90 days of the date he was retaken. Doyle contends the violation warrant was "constructively executed" the day it was issued against him because the intended effect of issuing the warrant was to keep him in the county jail pending disposition of the new charges against him. Doyle concludes this "constructive execution" of the warrant triggered the statutory requirement that a revocation hearing be held within 90 days.

We reject this argument. While clearly the issuance of the parole violation warrant was instrumental in Doyle's remaining in pretrial custody for four months, it does not follow that he should be deemed to have been in custody *solely* for an alleged parole violation. As noted above, there is no reason to ignore the practical realities of Doyle's case; he was in the county jail both because he was accused of committing a crime, and because he was accused of violating parole. The 90-day requirement of section 4214(c) obviously applies where the parolee is charged simply with violating some condition of his parole, *see Morrissey v. Brewer, supra.* But in Doyle's case, to require the Parole Commission to hold a revocation hearing within 90 days, whether or not the new criminal charges have been resolved, would seriously hamper the Commission in performing its fundamental duty—that is, to predict the capability of the parolee to live in society without committing antisocial acts. *See Morrissey, supra,* 408 U.S. at 480, 92 S.Ct. at 2599; *Moody, supra,* 429 U.S. at 89, 97 S.Ct. at 279.

From the Commission's point of view, the issuance of the warrant merely served to put the state and federal authorities in South Dakota on notice of its interest in Doyle as a suspected parole violator. Indeed, the Commission was under a statutory obligation to issue a warrant for an alleged parole violator "*as soon as practicable after discovery* of the alleged violation . . . ." 18 U.S.C. § 4213(b) (emphasis added). In this case, the Commission learned of an alleged parole violation on December 30, 1977, and it simply followed the statutory mandate in issuing the warrant forthwith. We are not insensitive to the argument that, from Doyle's point of view, where the Parole Commission's mere issuance of the warrant forced him to stay in pretrial custody, he might view it as "constructively executed." But following this logic, there would have been no "constructive execution" if Doyle had had the wherewithal to post a cash bail, or if Doyle had convinced the magistrate to lower the amount of his bail. If we adopted Doyle's logic, the result would be that the Parole Commission would never know, when it issued a warrant, whether it thereby committed itself to decide the parolee's fate within 90 days, with or without the benefit of all the relevant facts. We will not establish a rule that puts the Commission in such a quandary. "Execution" of a parole violation warrant must be determined by reference to the Commission's actions; it cannot be determined by reference to incidental effects upon the parolee's ability to obtain release on bail pending new criminal charges. We hold that here the Parole Commission did not "execute" the warrant by merely issuing it. Doyle's statutory argument therefore fails.

**C.** *Equal Protection*

■ Doyle's final contention is that he was denied equal protection of the laws by the Parole Commission's refusal to hold an earlier revocation hearing because he would have received an earlier hearing had he been wealthier.

Doyle reasons that if he had had enough money to post bail without the aid of a

released upon deposit of whatever sum of money will ensure the accused's appearance for trial. *See, e. g., Stack v. Boyle, supra; Sistrunk, supra; Roth, supra.*

bondsman, he would have been released from the county jail despite the issuance of the parole violation warrant. At that point, he continues, the Commission would have been forced to execute the warrant formally by taking him into custody, which would have triggered the requirement under 18 U.S.C. § 4214(c) of a revocation hearing within 90 days. With such an early revocation hearing, the Commission would have revoked his parole and imposed his violator term before he received his 1978 sentence. Since the federal judge who imposed his 1978 sentence ordered that it run concurrently with any other sentence to which he was subject, he would have had far less time to spend in prison. Doyle concludes that the result of his inability to post cash bail is that he must spend more time in prison than a wealthier person in his position would have spent. He argues that this result is impermissible under *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), and *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970).

Doyle's speculations about "what might have been" are dubious in light of the broad discretionary powers of the Parole Commission. Even assuming they are correct, however, he cannot make out an equal protection claim.

Doyle's reliance on *Tate* and *Williams* is misplaced. Those cases stand for the proposition that no person may be incarcerated, upon conviction of a crime, for a period longer than the maximum sentence set by statute solely on the basis of his or her inability to pay a criminal fine. They do not stand for the far more sweeping proposition put forward by Doyle that, whenever a person spends more time incarcerated than a wealthier person would have spent, the equal protection clause is violated. Indeed, the *Williams* Court explicitly declined to apply its holding to "the familiar pattern of alternative sentence of '$30 or 30 days,'" *id.*, 399 U.S. at 243, 90 S.Ct. 2023, even though such a sentence obviously imposes imprisonment on the basis of wealth.

In this case, Doyle will not spend more time incarcerated than the maximum period set by statute for the offenses of which he was found guilty. Therefore, *Williams* and *Tate* are not applicable here. Rather, we find the case of *McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), controlling.

In *McGinnis*, a state scheme for allowing good-time credit was challenged as violative of the equal protection clause. Under the scheme, a person sentenced to prison received jail-time credit for the period he or she spent in pretrial custody (so that the sentences of those unable to raise bail were equalized with the sentences of those released on bail before trial), but not good-time credit on the jail time. The result was that a person sentenced to one year in prison who spent four months in pretrial detention had eight months to serve in prison and received good-time credit only on those eight months. A person sentenced to one year who had been free on bail before trial received good-time credit on all twelve months of the sentence. Clearly this scheme resulted in longer incarceration for those unable to afford bail. Yet the Supreme Court, applying a rational-basis analysis, upheld the scheme. Most importantly for present purposes, the Court declared that the sole inquiry is whether the challenged action "rationally furthers some legitimate, articulated [governmental] purpose." *Id.*, 410 U.S. at 270, 93 S.Ct. at 1059. It is by this standard that the Parole Commission's action in the case at bar must be tested.[7]

Using the rational-basis standard, we find the Commission's issuance of, but delay in executing, the violation warrant against Doyle passes constitutional muster. This procedure put all parties—including Doyle—on notice of the Commission's interest in Doyle as a potential candidate for parole revocation, but at the same time allowed the Commission to await the development of all the relevant facts so that it might make an informed decision whether

---

**7.** In light of this standard, Doyle's reliance on *United States v. Gaines*, 449 F.2d 143 (2d Cir. 1971), for the proposition that there is impermissible discrimination under *Tate* and *Wil-* *liams* where a person's poverty results in service of a sentence longer than a richer person would have served, is misplaced.

to revoke Doyle's parole. This is a rational means of attaining the Commission's dual objective, on the one hand, to encourage rehabilitation by permitting parolees who can live peaceably in society to continue to do so, and, on the other hand, to protect society from those parolees who demonstrate that they cannot or will not abide by the rules. Since the Commission thus used rational means to attain legitimate goals, Doyle's equal protection challenge must fall.[8]

In conclusion, we hold that Doyle is not entitled to apply the time he spent in pretrial custody as a credit against his violator term, where he has already received full and effective credit on his 1978 sentence. We hold, further, that the Parole Commission did not violate Doyle's rights in refusing to hold a revocation hearing within a reasonably prompt time after the initial issuance of the violation warrant. The district court's order dismissing the petition for a writ of habeas corpus is therefore affirmed.

---

**8.** Our result would not change even if Doyle could prove that the Commission's primary objective in issuing the warrant in the first place was to accommodate the South Dakota authorities, who desired to prevent Doyle's release on bail. Under *McGinnis*, if there is *a* legitimate purpose for the challenged action, the legitimacy of other purposes is immaterial. *Id.*, 410 U.S. at 274–77, 93 S.Ct. at 1061–63.