**William David SMITH,
Petitioner-Appellant,**

v.

**UNITED STATES PAROLE COMMISSION, Respondent-Appellee.**

**No. 84–1564
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 11, 1985.

---

Wm. David Smith, pro se.

Edward C. Prado, U.S. Atty., Hugh P. Shovlin, Asst. U.S. Atty., San Antonio, Tex., for respondent-appellee.

Before RUBIN, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

William D. Smith, a federal prisoner, appeals from the district court's denial of his application for a writ of habeas corpus. *See* 28 U.S.C. § 2255. We affirm.

Smith alleged in his application for the writ that the United States Parole Commission denied him equal protection of law by delaying execution of an outstanding parole violator's warrant because Smith was unable to post bail pending trial on federal bank robbery charges. Smith's theory is that the Parole Commission's inaction, allegedly the result of his financial inability to post bail, will cause him to serve a prison sentence longer than a prisoner with greater financial resources would serve.[1] Consistently with a sister circuit, we find no merit to this contention and affirm for the reasons to be stated.

*Facts*

On February 8, 1973, Smith began concurrent service of ten-year sentences imposed upon convictions for offenses against the United States and the State of Michigan. On April 8, 1976, Smith received federal and state parole. On June 24, 1977, however, the United States Parole Commission issued a violator's warrant specifying various violations of parole committed by Smith. Smith's whereabouts were unknown when the warrant was issued; thus, it was not executed immediately.

Smith's whereabouts became known when he was arrested on new state and federal (bank robbery) charges on October 27, 1978. Shortly thereafter, Smith was returned to Michigan on a state parole violator's warrant. Michigan released Smith on September 4, 1980. That same day, a

---

1. On appeal, Smith adds a new claim—that the Commission violated constitutional ex post facto strictures by applying at his parole revocation hearing rules promulgated after his original sen- tencing and after his parole violations. We do not consider the ex post facto claim because Smith did not raise it in the district court.

federal court set Smith's bail at $30,000 on the still-pending bank robbery charges.[2]

Smith, according to the allegations of his habeas corpus application, was unable to post bail because of indigency. He remained in federal custody and ultimately entered a guilty plea on the bank robbery charges on March 24, 1981. Smith was sentenced to ten years in the custody of the Attorney General, to be followed by a five-year term of probation.

Thereafter, Smith received a parole revocation hearing in connection with the previous 1973 ten-year sentence from which Smith had been paroled in 1976. On November 30, 1982, the Parole Commission revoked Smith's parole, ruled that he would serve the entire remainder of his 1973 ten-year sentence that had not been served, and ruled that the service of the unserved remainder would begin after expiration of the 1981 ten-year sentence.

*Equal Protection Claim*

■ Two documents are important to Smith's equal protection claim. First, on November 9, 1978—shortly after Smith's arrest on the new state and federal charges—the Parole Commission issued an order to delay execution of the outstanding violator's warrant until disposition of the new charges. Smith does not claim that this order violated his equal protection rights; obviously, the order would have the same effect on the wealthy and the poor.

Second, there is a letter dated October 6, 1980, written to the Regional Commissioner of the Parole Commission by a probation officer in the Eastern District of Michigan. That letter, written after the federal bail of $30,000 was set, states that a Deputy United States Marshall "advised that our warrant will be executed should the parolee make bond."

Based on the probation officer's letter, Smith contends (1) that the delay in executing the violator's warrant was caused by

his financial inability to post bail and (2) that, had the violator's warrant been executed upon his release from state custody and before sentencing on the new federal charges, he would now be serving his 1973 and 1981 sentences concurrently rather than consecutively. Even assuming, however, that the probation officer's description of a deputy marshal's position concerning execution of the violator's warrant (at least arguably inconsistent with the Parole Commissioner's earlier order that execution be withheld pending disposition of the pending new charges), described the actual reason for delay in executing the violator's warrant, Smith's equal protection claim fails.

We are unable to hold that the delay in execution of the parole warrant, allegedly because of Smith's financial inability to make bail, can be said to be a denial of equal protection to him as against the treatment accorded more financially able individuals. The allegedly (or potentially) greater length of time served is not shown to result from his impoverished condition. *See Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). A more financially able parole violator, who made bail and secured immediate execution of the violation-warrant and revocation of the parole, was potentially subject to the same total sentence that Williams received—for example, through loss of the pre-trial detention credit that Smith received against his new federal sentence on the new charge, and through exercise of the district court's discretion to impose the new sentence consecutive to the sentence served as a result of the parole violation. In short, Smith's contention that his financial condition resulted in greater time served is merely speculative, and Smith has not shown that he suffered a longer total sentence solely because of his poverty.

---

**2.** The record is not clear on when bail was set and in what amount. It appears that it was set on more than one occasion, the amount and form of bail changing. These specifics are not important to our decision, however, for we assume that, as Smith alleges, Smith was finan-cially unable to post bail from the date of his release from state custody through the date of his sentencing on the new charges. (Bail on the federal charges was, of course, irrelevant prior to Smith's release from state custody.)

Moreover—apart from the flaws in Smith's premise arising from its inherent speculativeness—the Seventh Circuit has rejected an equal protection similar to Smith's, *i.e.*, based upon the greater sentence allegedly received by a parole violator because he was financially unable to make bail and thereby to force an immediate revocation hearing. The Seventh Circuit held that unconstitutional wealth discrimination simply is not involved by this allegedly disparate treatment that results from Parole Commission policies that serve rationally legitimate, articulated governmental policies in the administration of parole violations. *Doyle v. Elsea*, 658 F.2d 512, 517–19 (7th Cir.1981). *See also McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973).

*Ex Post Facto*

 For the first time on appeal Smith raises a claim that the Parole Commission violated constitutional ex post facto limitations by applying a regulation which was not in effect at the time of his original sentencing or at the time of his parole violations. Smith did not raise this claim below, so it will not be considered on appeal. *Healy v. Maggio*, 706 F.2d 698, 699 (5th Cir.1983); *Miller v. Turner*, 658 F.2d 348, 350 & n. 1 (5th Cir.1981); *Page v. United States Parole Commission*, 651 F.2d 1083, 1087 (5th Cir.1981).

Smith asks us to vary from this usual practice on the ground that prison authorities illegally took from him legal papers without which he could not make his ex post facto argument. We decline this request. First, we are without factual record to know whether anything was taken from Smith, let alone whether it was taken illegally. Second, the materials Smith identifies do not seem related to an ex post facto argument. Third, Smith was able to raise the claim in this court without the materials he alleges were taken; thus, it is difficult to see why the claim could not have been raised during the many months the matter was pending in the district court.

*Miscellaneous Motions*

Smith has filed motions (1) for an order that appellee's brief be withdrawn, (2) for a remand, (3) for an emergency order, (4) to clarify the record, and (5) for clarification of the eighteen-month provision. The motions are without merit or are mooted by our ruling on the merits of this appeal.

*Conclusion*

The district court's order dismissing Smith's habeas application is AFFIRMED. All pending motions are DENIED.

AFFIRMED. PENDING MOTIONS DENIED.