# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

—————

No. 18-20466

—————

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2018

Lyle W. Cayce
Clerk

MARANDA LYNN ODONNELL,

Plaintiff–Appellee,

versus

PAULA GOODHART; BILL HARMON; NATALIE C. FLEMING;
JOHN CLINTON; MARGARET HARRIS; LARRY STANDLEY;
PAM DERBYSHIRE; JAY KARAHAN; JUDGE ANALIA WILKERSON;
DAN SPJUT; JUDGE DIANE BULL; JUDGE ROBIN BROWN;
DONALD SMYTH; JEAN HUGHES,

Defendants–Appellants.

\* \* \* \* \*

LOETHA SHANTA MCGRUDER; ROBERT RYAN FORD,

Plaintiffs–Appellees,

versus

HARRIS COUNTY, TEXAS, ET AL.,

Defendant.

PAULA GOODHART; BILL HARMON; NATALIE C. FLEMING;
JOHN CLINTON; MARGARET HARRIS; LARRY STANDLEY;
PAM DERBYSHIRE; JAY KARAHAN; JUDGE ANALIA WILKERSON;
DAN SPJUT; JUDGE DIANE BULL; JUDGE ROBIN BROWN;
DONALD SMYTH; JEAN HUGHES,

Defendants–Appellants.

No. 18-20466

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, GRAVES, and DUNCAN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

This is a motion for stay pending appeal.  We grant the stay.

I.

Plaintiffs brought a class action against Harris County, Texas, and a number of its officials—including County Judges,[1] Hearing Officers, and the Sheriff (collectively, the "County")[2]—under 42 U.S.C. § 1983, alleging the County's system of setting bail for indigent misdemeanor arrestees violates Texas statutory and constitutional law and the Equal Protection and Due Process Clauses of the Fourteenth Amendment.[3]

---

[1] The parties use the term "County Judges" to refer to the judges of the County Criminal Courts of Law of Harris County, so we do likewise.  That term does not refer to the County Judge, who is the head of the County Commissioners' Court.

[2] Only fourteen of the sixteen County Judges join in the instant appeal.  The Sheriff and two County Judges chose not to join.  We use "Fourteen Judges" or "the Judges" when referring to the defendants.

[3] For a full review of Texas's bail system and the challenges to it, *see ODonnell v. Harris Cty.* (*ODonnell I*), 892 F.3d 147, 152–55 (5th Cir. 2018) (opinion on petition for re-hearing).  For misdemeanors in 2016 when suit was filed, bail ranged from $500 to $5,000, depending on the crime and the arrestee's criminal history.  Under the 2017 schedule, however, arrestees are classified based on their crime and risk score (determined using the Laura and John Arnold Foundation Public Safety Assessment).  The 2017 schedule utilizes twenty categories.  For seven of those, bail ranges from $500 to $2,000.  If an arrestee in one of those seven cannot post bail, he is presumptively eligible for an unsecured bond once he appears before the magistrate.  Alternatively, to facilitate earlier release, some of those arrestees can be brought before a Hearing Officer for a determination of probable cause.  The Hearing Officer can then grant a personal bond and release the arrestee.  The arrestees in the other

No. 18-20466

After a hearing, the district court granted Plaintiffs' motion for a preliminary injunction, finding that they were likely to succeed on their procedural due process and equal protection claims. We affirmed in part and reversed in part. *ODonnell I*, 892 F.3d at 152–55.[4] We remanded for a revised injunction "consistent with this opinion." *Id.* at 152. That revised injunction was to be "narrowly tailored to cure the constitutional deficiencies the district court properly identified." *Id.* at 166–67. We provided a model injunction but left "the details to the district court's discretion." *Id.* at 164.

On remand, the district court adopted the model injunction but added four provisions of its own—Sections 7, 8, 9, and 16. Section 7 applies to all misdemeanor arrestees who (a) are not subject to a formal hold,[5] (b) have executed an affidavit of financial condition showing inability to pay, and (c) have not been granted release on unsecured bond. The injunction directs the County to release them if they would have been released had they posted bond. These arrestees must be released within "the same time frame of release" as an arrestee who posted bond, and "[v]erification of references must not delay release." Revised PI § 7, App. 4–5.

In other words, the County cannot hold indigent arrestees for the 48 hours preceding their bail hearing if the same individual would have been released had he been able to post bond. The district court explained that that

---

thirteen categories (arrestees deemed a sufficiently serious risk) do not have bail set at the time of arrest but, instead, are detained until they are brought before the magistrate, who then determines the amount of bail.

[4] On petition for rehearing, an initial opinion, 882 F.3d 528 (5th Cir. 2018), was withdrawn and replaced by *ODonnell I*.

[5] Formal holds include a federal immigration detainer or an outstanding warrant from another county or municipal authority, a pending finding of mental illness or intellectual disability, family-violence detention procedures, and a medical condition that prevents participation in the pretrial bail system.

No. 18-20466

provision is to prevent those unable to afford bail "from being detained longer than those able to pay secured money bail before receiving a hearing and individual assessment." *Id.*

Except for formal holds, Section 8 requires the County to release, on unsecured personal bond, all misdemeanor arrestees who have not had a hearing and individual assessment within 48 hours. The County may require their return for a hearing but cannot hold arrestees "after the 48th hour after their arrest." Revised PI § 8, App. 6.

The district court justified Section 8 as addressing the concern of "arrestees being detained until case disposition and pleading guilty to secure faster release from pretrial detention." Revised PI Op. at 12, App. 21 (quoting *Odonnell I*, 892 F.3d at 166). Again, such arrestees could be required to return for an individualized hearing but could not be held beyond 48 hours. *Id.* at 13, App. 22.

Section 9 requires the County to implement procedures to comply with Section 8. Upon release, the arrestee will be subject to the bail amount previously set until his new hearing, but that amount will be imposed on an unsecured basis. *In absentia* hearings do not satisfy the 48-hour rule.

Section 16 applies the relief to "misdemeanor arrestees who are re-arrested on misdemeanor charges only or on warrants for failing to appear while released before trial on bond (either secured or unsecured)." Revised PI § 16, App. 8. The decisionmaker is free to consider these facts at the individual assessment hearing but must provide repeat offenders the same protections, in advance of that hearing, as any other first-time arrestee. Revised PI Op. at 16–17. App. 25–26.

On July 10, 2018, the Fourteen Judges filed this appeal of the

4

No. 18-20466

preliminary injunction and moved, in the district court, for a stay, pending appeal, of Sections 7, 8, 9, and 16.  The district court denied their motion.  On July 27, 2018, Fourteen County Judges filed an emergency motion with this court, requesting a stay only of those four sections set to go into effect at 12:01 a.m. on July 30, 2018.  We issued an emergency stay to allow time for full consideration of the motion, and we heard oral argument on the motion on August 7, 2018.  We now grant the motion and enter a stay of Sections 7, 8, 9, and 16 pending plenary resolution of this appeal by a merits panel.

## II.

A stay pending appeal "is not a matter of right."  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quotation marks omitted).  We consider

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam) (quoting *Nken*, 556 U.S. at 426).  The first two factors are the most critical.  *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016).

## A.

The Fourteen Judges offer seven reasons why they are likely to succeed on the merits:  (1) The revised injunction violates the mandate rule; (2) the revised injunction is overbroad such that it exceeds the limits of a federal court's power; (3) the revised injunction violates *Younger v. Harris*, 401 U.S. 37 (1971); (4) the revised injunction violates *Preiser v. Rodriguez*, 411 U.S. 475 (1973); (5) the revised injunction violates the Eighth Amendment; (6) the Constitution does not require mandatory release of those who cannot afford bail; and (7) the Constitution does not require mandatory release of those detained

No. 18-20466

more than 48 hours without a hearing.  Because the Fourteen Judges are likely to succeed on the merits as to the first two and the last two grounds, we need not—and do not—reach the *Younger*, *Preiser*, or Eighth Amendment theories.

1.

"[T]he mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court."  *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698, 702 (5th Cir. 2010).  The district court "must implement both the letter and the spirit of the appellate court's mandate."[6]  "[D]istrict courts are guided by the Supreme Court's instruction that 'the scope of injunctive relief is dictated by the extent of the violation established.'"  *ODonnell I*, 892 F.3d at 163 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  "The district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order."  *John Doe # 1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).

The *ODonnell I* panel clarified that under both the Due Process and Equal Protection Clauses, the precise "constitutional defect in the process afforded was the *automatic* imposition of pretrial detention on indigent misdemeanor arrestees."[7]  Thus, individualized hearings after which magistrates

---

[6] *United States v. McCrimmon*, 443 F.3d 454, 460 (5th Cir. 2006) (quotation marks omitted).  The mandate rule is subject to three exceptions—(1) Evidence at a later trial is substantially different; (2) there is an intervening change of law; (3) the prior decision is clearly erroneous and works a manifest injustice.  *See Ball v. LeBlanc*, 881 F.3d 346, 351 (5th Cir. 2018), *petition for cert. filed* (Aug. 3, 2018) (No. 18-162).  Neither side contends that any of those exceptions applies here.

[7] *ODonnell I*, 892 F.3d at 160, 163 ("The fundamental source of constitutional deficiency in the due process and equal protection analyses is the same: the County's mechanical application of the secured bail schedule without regard for the individual arrestee's personal circumstances.").

had to "specifically enunciate their individualized, case-specific reasons for [imposing bail] is a sufficient remedy." *Id.* at 160.[8] The procedures required for such hearings were "notice, an opportunity to be heard and submit evidence within 48 hours of arrest, and a reasoned decision by an impartial decision-maker." *Id.* at 163. The panel then provided detailed guidance on how a properly crafted injunction should look, cautioning that it should not "amount[] to the outright elimination of secured bail for indigent misdemeanor arrestees."[9]

Despite the district court's diligent and well-intentioned effort to comply with *ODonnell I*, Section 7 easily violates the mandate, which explicitly found that individualized hearings would remedy the identified procedural violations. The requirement that such a hearing be held within 48 hours is applied to those who cannot afford the prescheduled bond. In other words, the panel saw the 48-hour limit as sufficient to protect indigent arrestees from being detained for too long pending their hearings. *See id.* at 165; Revised PI § 6, App. 4.

The identified violation was the *automatic* imposition of bail. Individualized hearings fix that problem, so immediate release is more relief than required and thus violates the mandate rule and is not required by the Constitution. Further, though the *ODonnell I* panel refused to find clear error in the district court's ruling that the County Judges had not shown a "link between financial conditions of release and appearance at trial or law-abiding

---

[8] *Id.* at 163 ("Thus, the equitable remedy necessary to cure the constitutional infirmities arising under both clauses is the same: the County must implement the constitutionally-necessary procedures to engage in a case-by-case evaluation of a given arrestee's circumstances.").

[9] *Id.* ("That remedy makes some sense if one assumes a fundamental substantive due process right to be free from any form of wealth-based detention. But . . . no such right is in view.").

behavior before trial,"[10] the panel recognized that the primary purpose of bail is "to secure the presence of the defendant in court."[11]  Hence, the panel cautioned that an "outright elimination of secured bail for indigent misdemeanor arrestees" was an inappropriate remedy.  *ODonnell I*, 892 F.3d at 163.  Because the new injunction again orders release of an indigent arrestee with no strings attached and before an opportunity for the County to provide the strings, the injunction circumvents the purpose of bail and ultimately eliminates secured bail, all in violation of *ODonnell I*.

Release might be warranted were "one [to] assume[] a fundamental substantive due process right to be free from any form of wealth-based detention. But . . . no such right is in view."  *Id.*  Narrowing the applicability of the relief does not make it any more permissible.  Secured bail was not to be eliminated for any category of indigent arrestees, no matter how narrow.

But Section 7 does just that.  Preserving the magistrates' discretion post-hearing does not correct the violation of the explicit mandate not to eliminate secured bail.  Some wealth-based detention is permissible and was contemplated by the panel.  *See id.* at 163.

Additionally, *ODonnell I* remanded so the district court could "craft a revised injunction—one that is narrowly tailored to cure the constitutional deficiencies the district court properly identified."  *Id.* at 166–67.  The problem that the district court claims to address via Section 7 is not a deficiency that was originally identified, so it falls outside the confines of our narrow remand.

The district court frames the problem of what to do with arrestees during

---

[10] *Id.* at 162 (quotation marks omitted).

[11] *Id*. at 158 (quotation marks omitted) ("Texas state law creates a right to bail that appropriately weighs the detainees' interest in pretrial release and the court's interest in securing the detainee's attendance.").

the 48-hour prehearing window as one arising after the panel issued its ruling that included a sample injunction. Revised PI Op. at 9, App.18. With all due respect, that is not so. The original injunction contained the requirement that a hearing be held within 24 hours. Thus, the same issue of what to do with arrestees during the gap between arrest and hearing—be it 24 or 48 hours— was always at issue and could have been addressed during the initial proceedings.

Remand is not the time to bring new issues that could have been raised initially.[12] Thus, Section 7 plainly violates the mandate rule, and the Fourteen Judges are likely to succeed on the merits as to that section.

Sections 8 and 9 order the *immediate* release of any indigent detainee who is not provided an individualized hearing within 48 hours of detainment. *ODonnell I*, 892 F.3d at 160, addressed whether a hearing must occur within 24 hours, and it determined that 48 hours was sufficient under the Constitution. It did not, however, directly announce the remedy if a hearing does not occur within that timeframe. But in the model injunction, the proposed remedy for failure to comply with that requirement was for the County to make weekly reports to the district court identifying any delays and to inform the detainees' counsel or next of kin about the delays. *Id.* at 166. And, only "[a] pattern of delays *might* warrant further relief." *Id.* (emphasis added).

As explained, *ODonnell I* did not require the district court to adopt the model injunction word for word but instead left "the details to the district court's discretion." *Id.* at 164. Despite that latitude, the mandate that the

---

[12] *McCrimmon*, 443 F.3d at 459 ("All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below."); *see also Henderson v. Stalder*, 407 F.3d 351, 354 (5th Cir. 2005).

district court craft a narrowly tailored injunction is binding. The proposed relief of weekly progress reports and notification of counsel/kin was deemed sufficient to fix the constitutional deficiency. The district court was to monitor the situation for a pattern of violations and only then take possible corrective action.

Anything broader than that remedy violates any reasonable reading of the mandate. And at the very least, the injunction provides broader relief than necessary, as the model injunction illustrates. Sections 8 and 9 are definitively overbroad and arguably violative of the mandate rule, so the Fourteen Judges are likely to succeed on the merits as to those sections as well.[13]

2.

The Due Process and Equal Protection Clauses do not require the release required in Section 7. The relief would be warranted under due process only were a substantive right to release at issue. But the *ODonnell I* panel already found that the substantive right to release on "sufficient sureties" is "not purely defined by what the detainee can afford" and "does not create an automatic right to pretrial release." *ODonnell I*, 892 F.3d at 158.

Nor does the Equal Protection Clause require the release imposed by Section 7. The threshold question is the proper standard of review. The *Odonnell I* panel found the exception in *San Antonio Independent School District v. Rodriguez*,[14] to be applicable such that heightened scrutiny applied to the bail

---

[13] Because Section 16 grants the relief ordered in Sections 7, 8, and 9 to a particular category of arrestees, it rises and falls on the merits with those sections and does not require independent consideration.

[14] 411 U.S. 1, 20 (1973) (concluding that indigents receive heightened scrutiny where (1) "because of their impecunity they were completely unable to pay for some desired benefit," and (2) "as a consequence, they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit").

schedule. The release under Section 7, however, presents a narrower concern that is subject only to rational basis review because it is premised solely on inability to afford bail, as distinguished from inability to afford bail *plus* the absence of meaningful consideration of other possible alternatives. *See id.* at 161.

Caselaw bears out that distinction. An Equal Protection Claim that an indigent "person spends more time incarcerated than a wealthier person" is reviewed for a rational basis.[15] The 48-hour detention claim is based solely on the premise of inability to afford, as the detention itself is part of the remedy the panel created to afford arrestees more process.

The parties' contentions highlight that both the standard of review and the underlying merits of this issue are a challenge because of the level of generality. Looking at the detention alone, Plaintiffs assert the same constitutional deficiency the court found in the County's bail system: Identical arrestees are invidiously discriminated against on account of wealth. The Judges, however, frame the issue as one of disparate impact: The remedy to the automatic detention of the indigent is more process to allow them alternatives. Those who cannot afford the set bail are entitled to an individualized hearing within 48 hours to determine whether lowering that bail would be release on sufficient sureties.

The latter view is by far the better one. Plaintiffs artificially isolate a part of the remedy that, on its own, appears to be the same violation found in

---

[15] *Doyle v. Elsea*, 658 F.2d 512, 518 (7th Cir. 1981) (cited favorably by *Smith v. U.S. Parole Comm'n*, 752 F.2d 1056, 1059 (5th Cir. 1985) (applying rational basis review and finding that "unconstitutional wealth discrimination simply is not involved by this allegedly disparate treatment that results from Parole Commission policies that serve rationally legitimate, articulated governmental policies in the administration of parole violations [that result in increased jail time for those unable to afford bail]")); *see also McGinnis v. Royster*, 410 U.S. 263, 270 (1973).

the first instance.  Asking what the proper remedy would be reveals the weakness of that position.  Were we to find the 48-hour detention improper, we would have to affirm the district court's elimination of secured bail for the category of arrestees addressed in Section 7.  That is expressly what *ODonnell I* forbids.  That panel found that a procedural violation is subject to procedural relief.  That some arrestees would continue to afford and pay bail while others would avail themselves of the new hearing within 48 hours is an inherent part of this calculus.

Now that the requirement of a hearing is in place, the only remaining contention about the 48-hour window concerns only the inability to afford bail.  And that is an equal protection claim consistently rejected on rational-basis review.[16]  That does not call into question *ODonnell I*'s application of intermediate scrutiny or finding of a violation.

In *ODonnell I*, the inability to afford bail was coupled with the lack of meaningful considerations of alternatives.  Here, however, the alternative is the 48-hour detention and hearing.  In its original conclusion that the imposition of automatic bail violated due process, the panel "boiled down" the violation to this situation:

> [T]ake two misdemeanor arrestees who are identical in every way—same charge, same criminal backgrounds, same circumstances, etc.—except that one is wealthy and one is indigent. . . . One arrestee is able to post bond, and the other is not.  As a result, the wealthy arrestee is less likely to plead guilty, more likely to receive a shorter sentence or be acquitted, and less likely to bear the social costs of incarceration.  The poor arrestee, by contrast, must bear the brunt of all of these, simply because he has less

---

[16] *See, e.g.*, *McGinnis*, 410 U.S. at 270; *Smith*, 752 F.2d at 1059.  For example, a state scheme allowing good-time credit "resulted in longer incarceration for those unable to afford bail.  Yet the Supreme Court, applying a rational-basis analysis, upheld the scheme." *Doyle*, 658 F.2d at 518 (discussing *McGinnis*).

> money than his wealthy counterpart. The district court held that
> this state of affairs violates the equal protection clause, and we
> agree.

*ODonnell I*, 892 F.3d at 163.

That last piece is critical.  Detention of indigent arrestees and release of wealthier ones is not constitutionally infirm purely because of the length of detention.  Instead, the court considered the consequences of such detention: the likelihood of pleading guilty, the ultimate sentence given, and the social cost of a potentially lengthy pretrial incarceration.

None of these concerns comes to bear on the alleged problem Section 7 aims to cure.  The prehearing detention is capped at 48 hours.  Measures are in place to address violations of that procedural safeguard.  Misdemeanor arrestees awaiting their individualized bail hearing do not face the same dire prospects of "bear[ing] the brunt" of a lengthy pretrial incarceration caused by an unconstitutional bail system.  The individualized hearing imposed by the district court as modeled on the panel's suggestions is sufficient to cure the automatic imposition of bail.  It does so in a way that is rationally related to the state's interest in securing the appearance of arrestees.  *See id.* at 164–66.

3.

Sections 8, 9, and 16 are likewise not constitutionally required.  The district court described those sections as consistent with *ODonnell I,* concluding that the production of a report of those awaiting a hearing does not preclude the remedy of release.  *Id.*  That well-meant reasoning does not hold water.  *ODonnell I* expressly provided only procedural relief.[17]  The grant of automatic

---

[17] *ODonnell I*, 892 F.3d at 160, 163 ("There is a significant mismatch between the district court's procedure-focused legal analysis and the sweeping injunction it implemented. . . . [T]he equitable remedy necessary to cure the constitutional infirmities arising under both clauses is the same: the County must implement the constitutionally-necessary

release smuggles in a substantive remedy via a procedural harm. That goes too far. The due process and equal protection relief found sufficient in *Odonnell I* did not contemplate release, and it follows that such relief is improper.

### B.

The Judges have made an adequate showing to satisfy the remaining three factors. They and the public are harmed by enjoining the County's bail system. And given their likelihood of success on the merits, any harm to Plaintiffs, standing alone, does not outweigh the other factors. *See Planned Parenthood of Greater Tex. Surgical Health Servs v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013).

### III.

In sum, the expansive injunction entered on remand repeats the mistake of the original injunction: It "amounts to the outright elimination of secured bail for indigent misdemeanor arrestees." *ODonnell*, 892 F.3d at 163. But there is "no such . . . fundamental substantive due process right to be free from any form of wealth-based detention." *Id.* "The sweeping injunction is overbroad." *Id.*

The motion for stay, pending appeal, of Sections 7, 8, 9, and 16 is GRANTED.

---

procedures to engage in a case-by-case evaluation of a given arrestee's circumstances, taking into account the various factors required by Texas state law (only one of which is ability to pay).").

No. 18-20466

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

Harris County's unconstitutional bail practices will continue to deny equal protection and due process to indigent misdemeanor arrestees unless the amended preliminary injunction is fully and immediately implemented. "Such a denial is a misfit in a country dedicated to affording equal justice to all and special privileges to none in the administration of its criminal law." *Griffin v. Illinois*, 351 U.S. 12, 19 (1956).

The judges of Harris County Criminal Courts at Law Nos. 1 through 13 and 15 move for a partial stay, pending appeal, of the district court's amended order of preliminary injunction. The decision whether to grant a motion for stay pending appeal is governed by four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors . . . are the most critical." *Id.* As the parties seeking a stay, the judges bear the burden of satisfying these four factors. *Id.* at 433–34; *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982). They have satisfied none. I would therefore deny their motion.

**1. The judges are unlikely to succeed on the merits of their appeal.**

"[T]he mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004) (citing *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993)). The judges argue that Sections 7 and 8 of the amended injunction violate this court's mandate in *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018) (*ODonnell I*), because they require the release, on personal bond, of certain

15

misdemeanor arrestees in specified circumstances.[1] *ODonnell I* does not contain an "explicit directive[]" against the remedies provided by Sections 7 and 8. *See Lee*, 358 F.3d at 321 (quoting *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002)). Thus, to prevail on their mandate-rule argument, the judges must demonstrate that such a proscription is a "necessary implication" of this court's opinion. *See id.* at 320 (citing *Crowe v. Smith*, 261 F.3d 558, 562 (5th Cir. 2001)). When construing an appellate court's mandate, a district court must "tak[e] into account the circumstances that [the appellate court's] opinion embraces." *Sobley v. S. Nat. Gas Co.*, 302 F.3d 325, 333 (5th Cir. 2002).

This court's opinion in *ODonnell I* was directed, not to every conceivable remedy the district court might have entered, but to the district court's original preliminary injunction and must therefore be read in light of that order's particular provisions. Like Sections 7 and 8 of the amended injunction, Sections 2 and 3 of the original injunction required misdemeanor defendants who satisfied certain criteria to be released on unsecured personal bond in specified circumstances. But unlike Sections 7 and 8 of the amended injunction—both of which expressly state that the county "may require misdemeanor arrestees who are released on unsecured personal bonds under this Section to return for a hearing and individual assessment"—nothing permitted county officials to require defendants released under the original injunction to return for a hearing at which secured money bail could be imposed if necessary to provide "sufficient sureties." This is a crucial distinction. By failing to account for the county's "interest in assurance," *ODonnell I*, 892 F.3d at 158, the original injunction's open-ended release

---

[1] The judges also challenge Sections 9 and 16 of the amended injunction, but since those provisions largely depend on Sections 7 and 8, they do not warrant separate discussion here.

provisions "amount[ed] to the outright elimination of secured bail for indigent misdemeanor arrestees," *id.* at 163. Because Sections 7 and 8 of the amended injunction preserve the county's ability to impose secured bail on all misdemeanor arrestees, they do not "create an automatic right to pretrial release," *id.* at 158, and thus fully comport with *ODonnell I*'s mandate.

The amended preliminary injunction is also narrowly tailored to the equal protection and due process violations affirmed by this court in *ODonnell I. See id.* at 157–63.

Section 7 of the amended injunction requires, with various exceptions, that misdemeanor arrestees who "would otherwise be released after arrest and before a hearing and individual assessment . . . if not for their inability to pay the prescheduled or other secured financial conditions of release" must be released "on the same time frame" as "a misdemeanor arrestee who is able to pay secured money bail." By ensuring that misdemeanor arrestees are not detained before they receive an individualized hearing solely because of their inability to afford a preset amount of secured money bail, Section 7 aims to prevent county officials from violating the Equal Protection Clause. It is narrowly tailored to that purpose. Because it requires release only to the extent that county officials choose to engage in wealth-based detention through the use of secured money bail, Section 7 itself does not create any entitlement to release. Furthermore, Section 7 in no way eliminates secured money bail, which may still be imposed at an individualized hearing.

However thorough and fair it may be, an individualized hearing 48 hours *after* arrest cannot "fix" the deprivation of liberty and equal protection suffered by an indigent misdemeanor arrestee who is automatically detained *prior to* that hearing "solely because [she is] too poor to pay" a preset amount of secured money bail. *See Bearden v. Georgia*, 461 U.S. 660, 664 (1983). The majority contends that detention before the individualized hearing "is subject only to

rational basis review because it is premised solely on inability to afford bail, as distinguished from inability to afford bail *plus* the absence of meaningful consideration of other possible alternatives." In addition to being foreclosed by *ODonnell I*'s holding that heightened scrutiny—not rational basis review— applies here, 892 F.3d at 161–62 & n.6, the majority's argument squarely contravenes Supreme Court precedent. Indigent misdemeanor arrestees who are detained prior to their individualized hearings solely because they cannot afford secured money bail do not receive any "meaningful consideration of other possible alternatives" that would enable their pre-hearing release. Rather, they "share[] two distinguishing characteristics" that trigger heightened scrutiny: (1) "because of their impecunity they [are] completely unable to pay for some desired benefit"; and (2) "as a consequence, they sustain[] an absolute deprivation of a meaningful opportunity to enjoy that benefit." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 20 (1973); *accord ODonnell I*, 892 F.3d at 161–62. Accordingly, *Williams v. Illinois*, 399 U.S. 235 (1970), *Tate v. Short*, 401 U.S. 395 (1971), and *Bearden* control this case, and the majority's suggestion that this is an issue of "disparate impact" is unavailing. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 127 (1996) ("Sanctions of the *Williams* genre . . . are not merely *disproportionate* in impact. Rather, they are wholly contingent on one's ability to pay, and thus 'visi[t] different consequences on two categories of persons'; they apply to all indigents and do not reach anyone outside that class." (quoting *Williams*, 399 U.S. at 242)).[2]

---

[2] The sole Supreme Court decision that the majority cites to support its application of rational basis review is *McGinnis v. Royster*, 410 U.S. 263 (1973). The equal protection claim in *McGinnis*, however, involved a distinction that a state statute drew between time served in state prisons and time served in county jails. *Id.* at 268–72. While the Court indicated that this distinction adversely affected "those state prisoners *unable to afford or otherwise qualify for* bail prior to trial," *id.* at 268 (emphasis added), it did not analyze the claim in terms of invidious discrimination against the indigent. The majority also cites *Doyle v. Elsea*, 658 F.2d 512 (7th Cir. 1981), and *Smith v. United States Parole Commission*, 752

No. 18-20466

Section 8 of the amended injunction is also an appropriate remedy. Subject to certain exceptions, Section 8 requires the prompt release on unsecured personal bond of misdemeanor arrestees who "have not appeared at a hearing and individual assessment within 48 hours of arrest." Thus, Section 8 requires release only when county officials fail to comply with their duty under the Fourteenth Amendment to provide misdemeanor arrestees with a bail hearing within 48 hours of arrest. *See ODonnell I*, 892 F.3d at 160 ("We conclude that the federal due process right entitles detainees to a hearing within 48 hours."). Even then, the county retains the authority to impose secured money bail at a later hearing. Section 8 is therefore narrowly tailored to ensuring that misdemeanor arrestees are not detained without an individualized hearing for longer than the Due Process Clause permits.

The judges contend that Section 8 is overbroad because "the Fourteenth Amendment does not require the automatic release of arrestees who are detained more than 48 hours before they are afforded an individualized hearing regardless of the justification for the delay." They cite the Supreme Court's opinion in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), but *McLaughlin* says nothing about whether an order of release would be an appropriate remedy for an unduly delayed probable cause determination (the proceeding at issue in *McLaughlin*) or any other type of pretrial hearing.

The majority relies heavily on the following provision in *ODonnell I*'s model injunction:

> To enforce the 48-hour timeline, the County must make a weekly report to the district court of misdemeanor defendants

---

F.2d 1056 (5th Cir. 1985). Because it predated *Bearden*, *Doyle*'s basis for applying *McGinnis* instead of *Williams* rested on a faulty distinction. *Doyle*, 658 F.2d at 518 (finding *Williams* inapplicable because the prisoner "will not spend more time incarcerated than the maximum period set by statute for the offenses of which he was found guilty"). Consequently, *Smith*, which adopted *Doyle*'s reasoning and did not even mention *Bearden*, has little persuasive value.

identified above for whom a timely individual assessment has not been held. The County must also notify the defendant's counsel and/or next of kin of the delay. A pattern of delays might warrant further relief from the district court. Because the court recognizes that the County might need additional time to comply with this requirement, the County may propose a reasonable timeline for doing so.

*ODonnell I*, 892 F.3d at 166. The district court, however, was not required to confine its remedy to this or any other portion of the model injunction. *See id.* at 164. Moreover, nothing in the *ODonnell I* opinion indicates that this court considered the possibility of a limited release remedy like Section 8, which accommodates the constitutional rights of arrestees and the interest of county officials in being able to impose secured bail after a hearing and individualized assessment.

The judges recycle various arguments based on *Younger v. Harris*, 401 U.S. 37 (1971), *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and the Eighth Amendment. This court, having previously rejected those arguments, *ODonnell I*, 892 F.3d at 156–57 & n.3, is unlikely to find them persuasive in their repackaged forms.

## 2. The judges have not shown that they will suffer irreparably injury without a stay.

Citing questionable bond-forfeiture statistics, the judges assert that the amended injunction will undermine the county's criminal justice system and endanger public safety. Assuming that the judges could overcome the myriad deficiencies in that data identified by the district court and the plaintiffs, their statistics show, at most, "some 'possibility of irreparable injury'" and therefore fall short of satisfying the second stay factor. *Nken*, 556 U.S. at 434–35 (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The judges also claim that they will suffer irreparable harm because the amended injunction enjoins them from

enforcing state law, but nothing in Texas law requires the unconstitutional practices that the amended injunction seeks to remedy.

## 3. A stay will cause the plaintiff class to suffer substantial injury.

The district court found that "[p]retrial detention of misdemeanor defendants, for even a few days, increases the chance of conviction and of nonappearance or new criminal activity during release," and that "[c]umulative disadvantages mount for already impoverished misdemeanor defendants who cannot show up to work, maintain their housing arrangements, or help their families because they are detained." *ODonnell v. Harris Cty.*, 251 F. Supp. 3d 1052, 1158 (S.D. Tex. 2017); *see also id.* at 1121 (noting that "[r]ecent studies of bail systems in the United States have concluded that even brief pretrial detention because of inability to pay a financial condition of release increases the likelihood that misdemeanor defendants will commit future crimes or fail to appear at future court hearings," and that one study "found that for misdemeanor defendants, even two to three days of pretrial detention correlated at statistically significant levels with recidivism"). Without full and immediate implementation of the amended preliminary injunction, members of the plaintiff class will continue to suffer substantial harm as a result of Harris County's unconstitutional bail practices.

## 4. The public interest favors denying the motion for stay.

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)); *see also Williams*, 399 U.S. at 245 ("[T]he constitutional imperatives of the Equal Protection Clause must have priority over the comfortable convenience of the status quo."). If a stay is granted, the "tens of thousands of constitutional violations" already found by the district court, 251 F. Supp. 3d

No. 18-20466

at 1150 n.99, will only increase in number. The public interest strongly favors denying the motion for stay.

\*     \*     \*

I would deny the judges' motion for stay pending appeal. Because the majority decides otherwise, I respectfully dissent.